**No. 24-2109**

---

**UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

---

MICHAEL N. AND ANN HERLIHY AND THE ESTATE OF PETER L. BERGRUD,

*Appellants*,

v.

DBMP LLC,

*Appellee*.

---

On Appeal from the United States District Court
for the Western District of North Carolina, No. 24-cv-558

---

# RESPONSE BRIEF OF APPELLEE DBMP LLC

---


Gregory M. Gordon
JONES DAY
2727 North Harwood St., Suite 500
Dallas, Texas 75201
Telephone: (214) 220-3939

Jeffrey B. Ellman
JONES DAY
1221 Peachtree St., N.E., Suite 400
Atlanta, Georgia 30361
Telephone: (404) 521-3939

Sarah Welch
JONES DAY
901 Lakeside Ave.
Cleveland, Ohio 44114
Telephone: (216) 586-7401

C. Kevin Marshall
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001
Telephone: (202) 879-3939

Garland S. Cassada
Richard C. Worf, Jr.
ROBINSON, BRADSHAW & HINSON, P.A.
101 North Tryon St., Suite 1900
Charlotte, North Carolina 28246
Telephone: (704) 377-2536

*Counsel for Appellee DBMP LLC*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ ii
INTRODUCTION ........ 1
STATEMENT OF THE ISSUE ........ 3
STATEMENT OF THE CASE ........ 4
A. The Automatic Stay ........ 4
B. Asbestos Litigation and Bankruptcy Code § 524(g) ........ 5
C. The History of Asbestos Claims Against Old CertainTeed and the Corporate Restructuring ........ 8
D. Early Proceedings in DBMP's Chapter 11 Case ........ 11
E. Dismissal and Lift-Stay Efforts in the *Bestwall* and *Aldrich* Cases ........ 15
F. Appellants' Bankruptcy Court Lift-Stay Efforts ........ 20
G. Affirmance by the District Court ........ 23
STANDARD OF REVIEW ........ 26
SUMMARY OF ARGUMENT ........ 28
ARGUMENT ........ 29
I. The Bankruptcy Court Did Not Abuse Its Broad Discretion in Its *Robbins* Analysis ........ 29
A. *Robbins* controls a bankruptcy court's stay-relief analysis. ........ 29
B. The Bankruptcy Court did not abuse its discretion in its application of *Robbins*. ........ 36
II. The Bankruptcy Court Properly Considered *Carolin* in Response to Appellants' Bad-Faith-Filing Arguments. ........ 47
A. *Carolin* controls analysis of a claimed bad-faith filing. ........ 48
B. The Bankruptcy Court properly applied *Carolin* in light of the procedural posture and Appellants' attempts at circumvention. ........ 52
CONCLUSION ........ 59

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*A.H. Robins Co. v. Piccinin*,
788 F.2d 994 (4th Cir. 1986) .................... 7

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .................... 5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................... 38

*Baja Contrs., Inc. v. City of Chi.*,
830 F.2d 667 (7th Cir. 1987) .................... 27

*Carolin Corp. v. Miller*,
886 F.2d 693 (4th Cir. 1989) .................... *passim*

*Claughton v. Mixson*,
33 F.3d 4 (4th Cir. 1994) .................... 26, 31, 34

*Educ. Media Co. at Va. Tech, Inc. v. Insley*,
731 F.3d 291 (4th Cir. 2013) .................... 53

*Evans v. Eaton Corp. Long Term Disability Plan*,
514 F.3d 315 (4th Cir. 2008) .................... 27

*Furness v. Lilienfield*,
35 B.R. 1006 (D. Md. 1983) .................... 35, 51

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997) .................... 27

*Herlihy v. DBMP LLC*,
2024 WL 4589795 (W.D.N.C. Oct. 28, 2024) .................... 23

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*In re A.H. Robins Co.*,
880 F.2d 709 (4th Cir. 1989) ..... 5

*In re Albany Partners, Ltd.*,
749 F.2d 670 (11th Cir. 1984) ..... 49

*In re Aldrich Pump LLC*,
2023 WL 9016506 (Bankr. W.D.N.C. Dec. 28, 2023) ..... 19, 45

*In re Bestwall LLC*,
605 B.R. 43 (Bankr. W.D.N.C. 2019) ..... 16, 53, 54

*In re Bestwall LLC*,
658 B.R. 348 (Bankr. W.D.N.C. 2024) ..... 17

*In re Bestwall LLC*,
71 F.4th 168 (4th Cir. 2023) ..... *passim*

*In re Byung Mook Cho*,
581 B.R. 452 (Bankr. D. Md. 2018) ..... 48

*In re C&S Grain Co.*,
47 F.3d 233 (7th Cir. 1995) ..... 34

*In re Capitol Food Corp. of Fields Corner*,
490 F.3d 21 (1st Cir. 2007) ..... 34

*In re Conejo Enters., Inc.*,
96 F.3d 346 (9th Cir. 1996) ..... 34

*In re Corp. Deja Vu*,
34 B.R. 845 (Bankr. D. Md. 1983) ..... 35

*In re Dixie Broad., Inc.*,
871 F.2d 1023 (11th Cir. 1989) ..... 32, 33

**Page(s)**

*In re Dunes Hotel Assocs.*,
188 B.R. 162 (Bankr. D.S.C. 1995) ........ 49

*In re Eatman*,
182 B.R. 386 (Bankr. S.D.N.Y. 1995) ........ 39

*In re Fed.-Mogul Glob. Inc.*,
684 F.3d 355 (3d Cir. 2012) ........ 7

*In re Heine*,
2022 WL 883938 (3d Cir. Mar. 24, 2022) ........ 35

*In re Honx, Inc.*,
2022 WL 17984313 (Bankr. S.D. Tex. Dec. 28, 2022) ........ 56, 57

*In re Ionosphere Clubs, Inc.*,
922 F.2d 984 (2d Cir. 1990) ........ 4

*In re Johnson*,
655 B.R. 83 (Bankr. D.S.C. 2023) ........ 30

*In re Little Creek Dev. Co.*,
779 F.2d 1068 (5th Cir. 1986) ........ 35, 49, 57

*In re LTL Mgmt., LLC*,
64 F.4th 84 (3d Cir. 2023) ........ 16, 55

*In re Madden*,
1999 WL 33486095 (Bankr. D.S.C. Dec. 21, 1999) ........ 32, 48

*In re Mid-Valley, Inc.*,
305 B.R. 425 (Bankr. W.D. Pa. 2004) ........ 55

*In re Muhs*,
923 F.3d 377 (4th Cir. 2019) ........ 26

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*In re Nw. Child Dev. Ctrs., Inc.*,
2020 WL 8813970 (Bankr. M.D.N.C. Dec. 17, 2020) .......... 30

*In re Palmetto Interstate Dev. II, Inc.*,
653 B.R. 230 (Bankr. D.S.C. 2023) .......... 48

*In re Premier Auto. Servs., Inc.*,
492 F.3d 274 (4th Cir. 2007) .......... 23, 48, 50

*In re RAD Props., Inc.*,
84 B.R. 827 (Bankr. M.D. Fla. 1988) .......... 36

*In re Ramkaran*,
315 B.R. 361 (D. Md. 2004) .......... 30, 32, 48, 52

*In re Rexene Prods. Co.*,
141 B.R. 574 (Bankr. D. Del. 1992) .......... 4

*In re Robbins*,
964 F.2d 342 (4th Cir. 1992) .......... *passim*

*In re Secrest*,
453 B.R. 623 (Bankr. E.D. Va. 2011) .......... 34

*In re Sonnax Indus, Inc.*,
907 F.2d 1280 (2d Cir. 1990) .......... 34, 39

*In re SunEdison, Inc.*,
557 B.R. 303 (Bankr. S.D.N.Y. 2016) .......... 41

*In re Talladega Steaks, Inc.*,
50 B.R. 42 (Bankr. N.D. Ala. 1985) .......... 35

*In re Victory Constr. Co.*,
9 B.R. 549 (Bankr. C.D. Cal. 1981) .......... 36

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*In re White*,
410 B.R. 195 (Bankr. W.D.Va. 2008) .......... 39

*In re Wiencko*,
99 F. App'x 466 (4th Cir. 2004) .......... 30

*In re Wood*,
993 F.3d 245 (4th Cir. 2021) .......... 4

*In re Yukon Enters., Inc.*,
39 B.R. 919 (Bankr. C.D. Cal. 1984) .......... 35

*Ivester v. Miller*,
398 B.R. 408 (M.D.N.C. 2008) .......... 30

*Kane v. Johns-Manville Corp.*,
843 F.2d 636 (2d Cir. 1988) .......... 56

*In re Motors Liquidation Co.*,
2010 WL 4630327 (S.D.N.Y. Nov. 8, 2010) .......... 41

*In re Lee*,
461 F. App'x 227 (4th Cir. 2012) .......... 30

*Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*,
474 U.S. 494 (1986) .......... 4

*NAACP v. City of Mansfield*,
866 F.2d 162 (6th Cir. 1989) .......... 27

*Off. Comm. of Asbestos Claimants v. Bestwall LLC*,
2023 WL 7361075 (W.D.N.C. Nov. 7, 2023) .......... 5, 16, 49

*Ortiz v. Fibreboard Corp.*,
527 U.S. 815 (1999) .......... 46, 47

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Patel v. Garland*,
596 U.S. 328 (2022) .......... 53

*Rain Tree Healthcare of Winston-Salem, LLC v. J & F Partners, LLC*,
585 B.R. 777 (M.D.N.C. 2018) .......... 48

*Ritzen Grp., Inc. v. Jackson Masonry, LLC*,
589 U.S. 35 (2020) .......... 5

*Schulman v. Axis Surplus Ins. Co.*,
90 F.4th 236 (4th Cir. 2024) .......... 46

*Singh v. Fitzgerald*,
2020 WL 6268538 (E.D. Va. Sept. 23, 2020) .......... 48

*Toibb v. Radloff*,
501 U.S. 157 (1991) .......... 7

*Truck Ins. Exch. v. Kaiser Gypsum Co.*,
602 U.S. 268 (2024) .......... 6

*United States v. Rivera-Santana*,
668 F.3d 95 (4th Cir. 2012) .......... 38

*United States v. Smith*,
21 F.4th 122 (4th Cir. 2021) .......... 27

*Westberry v. Gislaved Gummi AB*,
178 F.3d 257 (4th Cir. 1999) .......... 26

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

**STATUTES**


11 U.S.C. § 109 .... 7

11 U.S.C. § 362 .... *passim*

11 U.S.C. § 502 .... 15

11 U.S.C. § 503 .... 6

11 U.S.C. § 524 .... *passim*

11 U.S.C. § 1103 .... 6

11 U.S.C. § 1112 .... 16

28 U.S.C. § 157 .... 7, 46

28 U.S.C. § 158 .... 5

28 U.S.C. § 1411 .... 7, 46


**OTHER AUTHORITIES**


3 *Collier on Bankruptcy* (16th ed. 2024) .... 31, 40

Fed. R. Bankr. P. 7001 .... 14

H.R. Rep. No. 103-835 (1994) .... 51

Rep. of the Judicial Conf. *Ad Hoc* Comm. on Asbestos Litig. (1991) .... 5

## INTRODUCTION

In this mass-tort bankruptcy, Appellants (asbestos claimants) contend that DBMP (the debtor) filed its bankruptcy case in "bad faith," so the bankruptcy proceeding is inherently flawed. But instead of moving to dismiss the bankruptcy on that basis, Appellants decided to present their arguments about bad-faith filing as a motion to lift the automatic stay. They have admitted why: to secure automatic and immediate appellate review.

There is nothing wrong with wanting appellate review, but Appellants' procedural choice carries consequences. Lift-stay motions, unlike motions to dismiss, are evaluated under a discretion-laden balancing test that weighs prejudice to the bankruptcy proceeding against hardship to the movants. *See In re Robbins*, 964 F.2d 342 (4th Cir. 1992). The Bankruptcy Court applied that longstanding standard and, in its discretion, determined that granting these lift-stay motions premised on a bad-faith bankruptcy filing would both invite and control the outcome of thousands of copycat motions. Permitting all of those claims to go to trial would effectively dismiss DBMP's bankruptcy (which does not warrant dismissal). By contrast, denying Appellants' motions would mean only that they could not liquidate their claims (yet) as to DBMP, while leaving them free to pursue their many other defendants in the tort system (and later seek recovery from DBMP's eventual bankruptcy

trust). Weighing the enormous prejudice to the estate against the minimal effects on Appellants, the Bankruptcy Court acted well within its discretion to deny the motions. The District Court affirmed.

Appellants contend the Bankruptcy Court should not have applied the discretionary *Robbins* test. Instead, they say, *Robbins* has a latent exception for a lift-stay motion that contends a bankruptcy was filed in subjective bad faith, and a court facing such a filing *must* grant stay relief. Precedent and authority (and even their supporting amicus) are uniformly to the contrary, instead prescribing the discretionary *Robbins* balancing test the court applied. Appellants strategically chose a procedural vehicle whose governing law disfavors grounds for relief common to many (or, here, all) claimants. There is no basis, under this Court's settled law, to ignore this flaw.

Appellants also take issue with this Circuit's test for bad-faith filing, which so labels a filing only if a bankruptcy is *both* objectively futile and filed in subjective bad faith. *Carolin Corp. v. Miller*, 886 F.2d 693 (4th Cir. 1989). Appellants say it applies only to motions to dismiss, not to lift-stay motions claiming a bad-faith filing or that would effect a dismissal. No authority supports this either. The Bankruptcy Court permissibly applied *Carolin* in light of the posture and presentation of Appellants' arguments. This Court, like the District Court, should affirm in this straightforward appeal.

## STATEMENT OF THE ISSUE

1. Did the Bankruptcy Court abuse its discretion in denying Appellants' motions for relief from the automatic stay?

## STATEMENT OF THE CASE

### A. The Automatic Stay

Commencing a bankruptcy case automatically imposes a stay. 11 U.S.C. § 362. Among other things, the automatic stay halts litigation of claims that are pending or that may be filed against the debtor.

The automatic stay is one of the most "fundamental debtor protections provided by the bankruptcy laws." *Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 503 (1986). It "allows the bankruptcy court to centralize all disputes concerning property of the debtor's estate in the bankruptcy court so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas." *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 989 (2d Cir. 1990). Without it, bankruptcies would devolve into a "race to the courthouse" among creditors. *In re Wood*, 993 F.3d 245, 249 (4th Cir. 2021) (citation omitted). More particularly, the purpose of the automatic stay is "three-fold: [1] to prevent certain creditors from gaining a preference for their claims against the debtor; [2] to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, [3] in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor." *In re Rexene Prods. Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992) (citations omitted).

A claimant can move for relief from the automatic stay. 11 U.S.C. § 362(d). A bankruptcy court's decision on such a motion can be immediately appealed as of right to the district court, and then to this Court. *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 589 U.S. 35, 37-38 (2020). That contrasts with non-final decisions, such as decisions denying motions to dismiss, which can be appealed only by leave or through a certified direct appeal. *See* 28 U.S.C. § 158(a), (d)(2); *Off. Comm. of Asbestos Claimants v. Bestwall LLC*, 2023 WL 7361075, at *3-4 (W.D.N.C. Nov. 7, 2023) (holding order denying dismissal of bankruptcy case to be interlocutory).

### B. Asbestos Litigation and Bankruptcy Code § 524(g)

Over 30 years ago, a Judicial Conference committee called asbestos litigation "a disaster of major proportions to both the victims and the producers," which courts were "ill-equipped" to handle. Rep. of the Judicial Conf. *Ad Hoc* Comm. on Asbestos Litig. 2 (1991). Facing a glut of asbestos cases, courts became bogged down, and "long delays [became] routine." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 598 (1997). An asbestos tort case can last a decade or more, *see In re Bestwall LLC*, 71 F.4th 168, 183 (4th Cir. 2023), *cert. denied*, 144 S. Ct. 2519-20 (2024); and "[a]lmost two-thirds" of expenditures may go to "attorneys' fees and other litigation expenses" rather than "injured persons," *In re A.H. Robins Co.*, 880 F.2d 709, 726 (4th

Cir. 1989) (citation omitted). For example, upon its bankruptcy filing, "nearly half of DBMP's pending asbestos-related claims on active dockets had been filed more than 10 years ago." JA280.

In 1994, Congress added § 524(g) to the Bankruptcy Code. It enables a Chapter 11 debtor facing "substantial" and indeterminate asbestos claims to globally resolve all current and future claims through a confirmed plan by funding a trust to pay both current and future claimants in exchange for a permanent "channeling" injunction directing all claims to the trust. 11 U.S.C. § 524(g)(2)(B); *see also Truck Ins. Exch. v. Kaiser Gypsum Co.*, 602 U.S. 268, 273-74 (2024). The statute protects claimants by requiring, among other things, (1) appointment of a future claimants' representative (the "Future Claimants' Representative") and a current claimants' committee (the "Committee," and together with the Future Claimants' Representative, the "Claimant Representatives"), both of which the debtor funds; (2) supermajority support by 75% of claimants for a plan seeking relief under § 524(g); and (3) district-court approval of such plan as fair and equitable. *See Truck*, 602 U.S. at 273-74; 11 U.S.C. §§ 524(g)(2)-(4), 503(b)(2), 1103(a).

A trust established by a § 524(g) plan administratively processes and pays claims promptly, fairly, and with lower transaction costs, for the benefit of claimants. *See* 11 U.S.C. § 524(g)(2). Section 524(g) thus has been

"effective[ ] in remedying some of the intractable pathologies of asbestos litigation." *In re Fed.-Mogul Glob. Inc.*, 684 F.3d 355, 362 (3d Cir. 2012). As the Bankruptcy Court here put it, in an earlier ruling not at issue in this appeal: "A section 524(g) trust 'will provide all claimants—including future claimants who have yet to institute litigation—with an efficient means through which to equitably resolve their claims.'" JA294. In addition, "personal injury claimants" remain "entitled, if they elect to do so, to have a jury trial." *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1012 (4th Cir. 1986); 28 U.S.C. §§ 1411(a), 157(b)(5).

Chapter 11 does not require insolvency or any level of financial distress. Rather, "Congress took care in [11 U.S.C.] § 109 to specify who qualifies—and who does not qualify—as a debtor under the various chapters of the Code." *Toibb v. Radloff*, 501 U.S. 157, 161 (1991). Although Congress required a Chapter 9 municipal debtor to be insolvent and specified financial qualifications for being a Chapter 13 debtor, it omitted any such requirement for voluntary Chapter 11 debtors. 11 U.S.C. § 109(c)-(e). Similarly, § 524(g) does not add an insolvency requirement for Chapter 11 debtors employing it. *See* § 524(g)(2)(B) (specifying requirements based on nature and extent of the asbestos litigation). Over the years, courts have authorized over 60 trusts

under § 524(g)—including for many solvent companies. *See* JA601-602 (collecting examples).

### C. The History of Asbestos Claims Against Old CertainTeed and the Corporate Restructuring

For nearly 50 years, the predecessor of DBMP, CertainTeed Corporation (with all of its historical forms, collectively, "Old CertainTeed"), faced hundreds of thousands of asbestos-related claims as a result of asbestos-containing products manufactured and sold until the 1970s or early 1980s, and asbestos cement-pipe products produced and sold until 1993. JA119-120; JA227-228. Old CertainTeed's asbestos-containing products were not friable; nor, as long as recommended work practices were followed, were they likely to release hazardous concentrations of asbestos into the air. *See* JA120.

For more than 20 of those years, Old CertainTeed was named in a relatively small number of asbestos lawsuits, and its defense and indemnity costs likewise were relatively low. JA121-122, JA228. But as certain primary asbestos manufacturers began to file for bankruptcy protection and thus leave the tort system, particularly in the early 2000s, the number of claims against Old CertainTeed surged. JA228. By January 2020, almost 60,000 asbestos-related claims, filed in courts across the country, were pending

against DBMP as Old CertainTeed's relevant successor, with more than 32,000 on active dockets. JA229.

In asbestos litigation, claimants typically sue and collect from many defendants. JA279, JA293, JA1208. Payments by Old CertainTeed were typically less than 4% of a plaintiff's recovery. JA279, JA1208. But that added up for Old CertainTeed and DBMP: All told, since 2002 alone, they spent approximately $2 billion defending and resolving over 300,000 lawsuits alleging asbestos exposure. JA120-121, JA228. Absent the Chapter 11 case, DBMP expects thousands of additional claims would have been filed against it for decades to come. JA121, JA229.

That magnitude and projected continuation of this litigation led Old CertainTeed to undertake a corporate restructuring in Fall 2019, completing a "divisional merger" under a decades-old provision in Texas's Business Organizations Code. JA114-115. Old CertainTeed ceased to exist, and two new companies, DBMP and CertainTeed LLC ("New CertainTeed"), were formed. DBMP received Old CertainTeed's asbestos-related liabilities, plus $25 million in cash, all the equity of an operating business that produces cash flow, and certain other assets. JA116-117, JA234. New CertainTeed received all of Old CertainTeed's other liabilities and assets. JA117.

A key asset of DBMP was and is a Funding Agreement that the new companies executed. It is a contract obligating New CertainTeed to fund DBMP's expenses for a Chapter 11 reorganization and § 524(g) trust to the extent that DBMP's assets are insufficient, without any corresponding repayment obligation. JA117-118, JA1341-1356 (stipulation confirming key terms of Funding Agreement). It is not necessary to the funding obligation that New CertainTeed obtain relief under § 524(g) or agree to a bankruptcy plan in DBMP's case.

The restructuring enabled Old CertainTeed to pursue § 524(g) relief for asbestos liabilities without the entire company having to file for bankruptcy. The Funding Agreement preserves the paying power of Old CertainTeed because it makes available New CertainTeed's and DBMP's combined resources from Old CertainTeed—giving DBMP the ability to meet its obligations, including paying asbestos claims. A filing by Old CertainTeed thus would not have increased assets available to pay claimants. However, it would have magnified the complexity, time, and cost of the case—delaying resolution for asbestos claimants; affecting vendors, customers, and employees; and risking diminution of assets available to fund a trust. JA231-232.

### D. Early Proceedings in DBMP's Chapter 11 Case

**1.** In January 2020, DBMP filed its Chapter 11 case to permanently, globally, and fairly resolve its asbestos liability through a § 524(g) trust. JA124, JA276. It also moved to extend the automatic stay (or impose a preliminary injunction) to prevent claimants from circumventing the bankruptcy by pursuing against non-debtor parties the same claims brought against DBMP that DBMP was seeking to resolve in its Chapter 11 case. JA219-220; *see generally Bestwall*, 71 F.4th at 178-185 (affirming such an order). The Committee and the Future Claimants' Representative objected. JA220. And the Committee moved to lift the automatic stay as to all asbestos claimants. JA221. After a multi-day hearing on both motions, the Bankruptcy Court granted DBMP's motion and denied the Committee's.

**a.** In granting DBMP's motion, the Bankruptcy Court found that, due to the divisional merger, DBMP was "exclusively responsible for the DBMP Asbestos Claims." JA267. It also found that continued prosecution of those claims in the tort system against non-debtor parties "would necessarily result in the liquidation and recovery of claims against" DBMP outside of the Chapter 11 case. JA267. The court thus held that the automatic stay barred prosecution of such claims during the bankruptcy case. JA267.

In the alternative, the Bankruptcy Court also granted DBMP's preliminary-injunction request. The court found that DBMP's reorganization would "be impossible without the benefit of the automatic stay and the preliminary injunction." JA225. In support, it found, among other things: that DBMP has the financial ability to fund a § 524(g) trust and pay for the bankruptcy, JA289; that concurrent litigation of asbestos claims in the state tort system "would gravely harm, and almost certainly end," DBMP's reorganization efforts, JA291; that DBMP's successful reorganization "would promote Congress's particular goal in section 524(g) by establishing an asbestos trust that would efficiently and equitably resolve tens of thousands of asbestos claims," JA294; and that the only apparent "harm to asbestos claimants appears to be delay in recovering what for most asbestos claimants will be but a small portion of their overall damages," JA293. Accordingly, the harm to DBMP absent an injunction outweighed any prejudice to asbestos claimants from the injunction.

**b.** The Bankruptcy Court denied the Committee's lift-stay motion at the same time. It recognized that the relief sought—effective dismissal of the Chapter 11 case—could not be "directly" obtained under the Fourth Circuit's *Carolin* rule for dismissing a case as filed in "bad faith." JA225; *see supra* at 2. Nor could it "be had through indirect means"—that is, a motion to lift stay

rather than a motion to dismiss. JA225. The Bankruptcy Court noted that "the way to challenge" the corporate restructuring and the filing of DBMP's case "is not through piecemeal individual claimant actions in the tort system." JA286. Instead, such a challenge should come "through plan negotiation and/or an adversary proceeding filed in this case for the benefit of all asbestos claimants." JA286.

Applying and balancing the factors from *Robbins*, 964 F.2d at 345, this Court's standard for lift-stay motions, the Bankruptcy Court reasoned that DBMP would suffer substantial prejudice if the court granted relief, which would outweigh any hardship to claimants from delay if the court denied relief. JA275, JA278-280. In support, the court made several findings, including: that a § 524(g) trust could "provide all asbestos claimants," including future claimants, "a more efficient means to resolve their claims," JA280; that granting stay relief would "foreclose[]" the "ability to treat equitably and consistently all similarly situated claimants through a section 524(g) consensual plan of reorganization" and cause "bedlam" and "inconsistent results for creditors," JA276, JA286; and that piecemeal litigation of asbestos cases across the country following relief from stay would not promote judicial economy (even though the claims involved state law), JA282. Therefore, the court concluded that granting lift-stay relief

"would amount to an effective dismissal of the Chapter 11 Case without satisfying the Fourth Circuit's stringent *Carolin* dismissal standard, or even such a motion being filed." JA276.

No party appealed the Bankruptcy Court's ruling on either DBMP's motion to extend the stay or the Committee's lift-stay motion.

**2.** No party has moved to dismiss DBMP's bankruptcy case. But the Claimant Representatives commenced three adversary proceedings in the case. *See generally* Fed. R. Bankr. P. 7001. The first seeks substantive consolidation of DBMP with New CertainTeed or, in the alternative, reallocation of DBMP's asbestos liabilities to New CertainTeed—effectively an effort to unwind the corporate restructuring. Adv. Pro. No. 21-3023, Adv. Dkt. 1. The second (filed on behalf of the bankruptcy estate with the court's permission) asserts fraudulent-transfer claims related to the corporate restructuring, including alleging that the restructuring left DBMP insolvent. Adv. Pro. No. 22-3000, Adv. Dkt. 14; *see* Dkt. 1197. The third (also filed on behalf of the estate) asserts breach of fiduciary duty, aiding and abetting a breach of fiduciary duty, and civil conspiracy in connection with the corporate restructuring. Adv. Pro. No. 22-3001, Adv. Dkt. 12; *see* Dkt. 1197. Discovery in the first two proceedings is ongoing, while the third is stayed pending resolution of the fraudulent-transfer allegations.

**3.** DBMP has continued to advance the bankruptcy case and its efforts to reach a resolution with the Claimant Representatives. At its request, the Bankruptcy Court approved a process for estimating DBMP's aggregate liability, as is common in asbestos bankruptcies to help in negotiating, formulating, and confirming a Chapter 11 plan. JA590-591; *see* 11 U.S.C. § 502(c). The parties are preparing for the estimation proceeding. Also at DBMP's request, the Bankruptcy Court ordered the parties to mediation to negotiate the Chapter 11 case's possible resolution.

### E. Dismissal and Lift-Stay Efforts in the *Bestwall* and *Aldrich* Cases

Two other asbestos bankruptcy cases in the Western District of North Carolina, in which the debtors were formed through corporate restructurings similar to DBMP's, provide context for this case and the order on appeal. Four motions to dismiss and two lift-stay motions have been filed in *In re Bestwall LLC*, No. 17-31795 (Bankr. W.D.N.C.). Two motions to dismiss and two lift-stay motions have been filed in *In re Aldrich Pump LLC*, No. 20-30608 (Bankr. W.D.N.C.). The claimants who moved to dismiss or to lift the stay in those cases were all represented by some or all of Appellants' counsel and counsel to the amicus.

**1.** While DBMP's case has seen no motion to dismiss, *Bestwall* has seen four. First, the official committee of asbestos claimants moved to

dismiss the case in 2018 as a "bad faith" filing under 11 U.S.C. § 1112(b). Applying *Carolin*, the bankruptcy court in mid-2019 denied the motion because the committee had not shown objective futility. *In re Bestwall LLC*, 605 B.R. 43, 49-51 (Bankr. W.D.N.C. 2019); *see supra* at 2 (summarizing *Carolin*). This Court declined a direct appeal later that year, and the district court denied leave to appeal. *Off. Comm. of Asbestos Claimants v. Bestwall LLC*, No. 19-408 (4th Cir. Nov. 14, 2019), Dkt. 13; *Bestwall*, 2023 WL 7361075. The committee filed a second unsuccessful motion to dismiss arguing that Bestwall had failed to prosecute its case. *Bestwall*, Dkt. 1546.

Five years after the first motion to dismiss, in early 2023, certain claimants ("Buckingham") filed the third, seeking to dismiss Bestwall's case as—again—a "bad faith" filing under § 1112(b). The committee joined in, filing the case's fourth motion to dismiss and asking the court to revisit its *Carolin* analysis. It also repackaged the argument that the debtor lacked "financial distress" supposedly necessary to be eligible for bankruptcy (*see generally In re LTL Mgmt., LLC*, 64 F.4th 84 (3d Cir. 2023)) as a "jurisdictional" challenge under the Constitution's Bankruptcy Clause. The bankruptcy court again denied the motions to dismiss, relying on its previous reasoning, the law-of-the-case doctrine, and precedent rejecting the

committee's constitutional arguments. *In re Bestwall LLC*, 658 B.R. 348 (Bankr. W.D.N.C. 2024).

The bankruptcy court granted the committee's request to certify a direct appeal, because of the constitutional issue; but it denied Buckingham's request, because he simply raised previously adjudicated *Carolin* issues governed by law of the case. *Bestwall*, Dkt. 3354, at 73-76. This Court accepted the committee's direct appeal. *Official Comm. of Asbestos Claimants of Bestwall LLC v. Bestwall LLC*, No. 24-170, Dkt. 15 (4th Cir. May 31, 2024). The clerk is in the process of scheduling argument.

**2.** Also in *Bestwall*, some claimants (the "Dales") moved for stay relief to pursue their asbestos claims against Bestwall in state court. *Bestwall*, Dkt. 3127. The bankruptcy court denied the motion, applying *Robbins* and finding that, in that "mass tort asbestos case" and given the lack of "any unique facts" differentiating the Dales from the other "60,000 claimants," the court would be compelled to grant similar future motions. *Bestwall*, Dkt. 3154, at 69:24-25, 70:6-11. The resulting parallel mass tort litigation would irreparably harm the debtor and be "akin to the dismissal of the case." *Id.* at 71:1-4. The Dales appealed but later withdrew their appeal.

Buckingham quickly filed his own stay-relief motion, repeating his unsuccessful arguments for dismissal. *Bestwall*, Dkt. 3242. The bankruptcy

court denied this motion too, "for the same reasons" it had denied the Dales' and had granted the debtor's request for a preliminary injunction to stay litigation of the same claims against affiliates. *Bestwall*, Dkt. 3268, at 77:3-4; *see Bestwall*, 71 F.4th 168 (affirming preliminary injunction). Plus, *Robbins* "weigh[ed] against modifying the automatic stay" given the mass-tort nature of the case and lack of "facts or circumstances" that were unique to Buckingham. *Bestwall*, Dkt. 3268, at 77:10-21, 78:1-4. Again, granting the motion would obligate the court to evenhandedly grant motions of "most, if not all, claimants who sought similar relief," "ultimately equat[ing] to dismissal." *Id.* at 77:23-25, 78:12. The bankruptcy court also held that it would defy "logic to conclude that [*Carolin*'s] two-prong standard doesn't apply" to the motion to the extent premised on a purported bad-faith filing, especially when lifting the stay would amount to *de facto* dismissal. *Id.* at 79:16-80:5, 81:16-25. Buckingham's appeal is pending in the district court. *Buckingham v. Bestwall LLC*, No. 24-297 (W.D.N.C.).

**3.** In *Aldrich*, both the official committee of asbestos claimants and certain individual claimants moved to dismiss the bankruptcy in early 2023, arguing that the debtors there lacked the supposedly necessary "financial distress." As in *Bestwall*, they also couched their lack-of-distress argument as a "jurisdictional" challenge under the Constitution's Bankruptcy Clause.

Judge Whitley (also the bankruptcy judge in *DBMP* at the time) denied the motions, recognizing *Carolin* as controlling and agreeing with Judge Beyer's decisions denying similar motions in *Bestwall*. *In re Aldrich Pump LLC*, 2023 WL 9016506, at *22-28, *33 (Bankr. W.D.N.C. Dec. 28, 2023). This Court declined a direct appeal, and motions for leave to appeal are pending in the district court. *Off. Comm. of Asbestos Personal Injury Claimants v. Aldrich Pump LLC*, No. 24-128(L) (4th Cir. Apr. 17, 2024), Dkt. 50; *Off. Comm. of Asbestos Personal Injury Claimants v. Aldrich Pump LLC*, No. 24-42 (W.D.N.C.); *Semian v. Aldrich Pump LLC*, No. 24-44 (W.D.N.C.).

**4.** Finally, *Aldrich* claimants have filed two rounds of lift-stay motions. First, in early 2023, a Mr. Semian (who also joined a motion to dismiss) moved for stay relief. *Aldrich*, Dkt. 1588. Judge Whitley denied that motion, finding that, if he granted it, at least a "substantial number of the claimants, enough to wreck the bankruptcy case," would seek similar relief, "effectively precipitat[ing] a *de facto* dismissal of the case." *Aldrich*, Dkt. 1702, at 67:6-12. He also found that granting relief would undermine pending adversary proceedings challenging key aspects of the cases. *Id.* at 67:14-20; *cf. supra* at 14 (discussing such proceedings in *DBMP*). Semian moved (with consent) to stay his district court appeal pending resolution of this appeal. *Semian v. Aldrich Pump LLC*, No. 24-1042 (W.D.N.C.).

In Spring 2024, certain additional claimants filed another lift-stay motion in *Aldrich*, largely identical to Buckingham's in *Bestwall* and the stay-relief motions in these appeals. *Aldrich*, Dkt. 2243. After the Bankruptcy Court entered its order denying the stay-relief motions at issue in these appeals, the claimants in *Aldrich* withdrew their motion. *Aldrich*, Dkt. 2268.

### F. Appellants' Bankruptcy Court Lift-Stay Efforts

Appellants have pending tort claims against DBMP, which DBMP continues to dispute. *See* JA587. Although the automatic stay paused that litigation, it did not stay their claims against other asbestos defendants. The Bergrud estate sued 22 defendants (in addition to Old CertainTeed) and has "resolved" all of those claims. JA429, JA327. The Herlihys sued at least eight defendants (in addition to Old CertainTeed) and are apparently scheduled for trial this March. JA502, JA470.

After the denial of motions for dismissal and for stay relief in *Bestwall* and *Aldrich*, the same counsel filed Appellants' stay-relief motions in this case, arguing that "cause" exists under § 362(d)(1) to lift the stay and permit their state-court tort actions to continue to trial. JA297-334, JA439-476. The motions briefly discussed the *Robbins* precedent governing stay-relief under § 362(d)(1) but focused on the bad-faith-filing arguments that claimants had

raised in dismissal motions in *Bestwall* and *Aldrich*. At the hearing, counsel for the Bergrud estate conceded he sought a ruling on bad-faith filing through a lift-stay motion, rather than a motion to dismiss, so he could appeal as of right. JA833-834, JA836.

The Bankruptcy Court denied Appellants' motions. It recognized they were filed by "the same firm pressing the same rejected relief and theories" as in *Bestwall* and *Aldrich*, recounted the litigation of those motions, and agreed with Judge Beyer's reasoning in *Bestwall*. JA914-919. That court also adopted its own earlier findings in denying the Committee's lift-stay motion. JA914-919; *see supra* at 12-14 (summarizing those findings). As the court recognized, "substantially identical requests for relief" had by then "been entertained at least four times between the three so-called 'two-step' cases in this District." JA914.

Balancing the considerations under *Robbins*, the Bankruptcy Court saw no reason for a different conclusion this time. JA914. If anything, each successive motion confirmed the reasons for denying stay relief. Start with prejudice to the bankruptcy: Although Appellants claimed it was "speculative" to think that granting their motions would lead to an "avalanche of motions" seeking the same relief for other claimants, the Bankruptcy Court found the opposite. JA920-921. Appellants' arguments for

lifting the stay attacked the case as a whole, as filed in bad faith, rather than involving facts specific to Appellants—that is, as this Court has put it, being "based on the specific facts of a particular claim"—so they would apply equally to any other movant. JA918-919 (quoting *Bestwall*, 71 F.4th at 183).

Based on its experience in asbestos cases and knowledge of this case, the Bankruptcy Court found that, if it granted the motions, "even just to liquidate the claims," it was "an absolute certainty" there would be "dozens of claimants making the motions and by the end of summer there'd be tens of thousands." JA920-921. That was in part because most of the myriads of claimants against DBMP "are represented by a dozen or so asbestos firms across the country, firms that are knowledgeable" about the cases and "aggressive in representing their clients." JA920-921. Appellants' decision to attack the entire bankruptcy as filed in bad faith—a ground that any claimant could equally press—and lack of individualized prejudice made that result all but inevitable.

The Bankruptcy Court recognized that "the standard for relief from stay is cause and the controlling case in our Circuit is *Robbins*," which "involve[d] a balancing test." JA293. As a result, bad faith is not the "standard" but is, "[a]t most, [] a factor." *Id*. And to the extent that a request for stay-relief rested on an argument that the bankruptcy case was filed in

bad faith, then, as Judge Beyer had recognized, *Carolin*'s two-prong standard for identifying such "bad faith" applies. JA919. Otherwise—if a court in the lift-stay context were to find a case improperly filed when it did not satisfy the *Carolin* standard—it would be "indirectly" doing what it is "not permitted to do or not inclined to do" directly. JA923; *see also* JA919-920.

The Bankruptcy Court thus declined to make findings on subjective bad faith (just one of the two elements for finding bad faith under *Carolin*) "on this record or at this stage in the case." JA921. Plus, tellingly, some of Appellants' arguments "were just rehashes of arguments previously made and rejected . . . like arguing that *Premier* is the standard [for a bad-faith filing], not *Carolin*." JA924 (mentioning *In re Premier Auto. Servs., Inc.*, 492 F.3d 274 (4th Cir. 2007)). The court also pointed to the adversary proceedings that the Claimant Representatives were pursuing to directly challenge DBMP's corporate restructuring. JA923; *see supra* at 14.

**G. Affirmance by the District Court**

In a consolidated appeal, the District Court, after argument, affirmed both denials of stay relief. JA625, JA627; *Herlihy v. DBMP LLC*, 2024 WL 4589795 (W.D.N.C. Oct. 28, 2024) (Bell, J.).

As a threshold matter, it saw the "narrow issue" presented on appeal to be "[w]hether the Bankruptcy Court abused its discretion in applying

*Robbins*." JA1187. The appeal did not involve the "other issues" that remained "pending in the Bankruptcy Court" in adversary proceedings, including the permissibility of the divisional merger that created DBMP and "other broad claims of wrongdoing." JA1187.

As to the facts, the District Court agreed with and adopted the Bankruptcy Court's findings. JA1189. And as to the law, the District Court agreed that *Robbins*'s applicability was "well established in the Fourth Circuit." JA1190. The court rejected Appellants' argument that *Robbins* does not apply, explaining that "nothing in *Robbins* suggests that it cannot or should not be applied to motions where 'bad faith' might be considered." JA1190.

The District Court concluded that the Bankruptcy Court "plainly" did not abuse its discretion in applying the *Robbins* framework to the facts implicated by Appellants' motion. JA1193. In particular, the Bankruptcy Court was "not unreasonable to conclude that DBMP's bankruptcy estate would be harmed by allowing thousands of asbestos claimants to proceed in state court while the bankruptcy 'continues' (to the extent that would even be possible)." JA1193. The same was so of that court's conclusion that the prejudice to DBMP in lifting the stay would outweigh any prejudice to claimants in delayed receipt of possible, relatively modest payments from

DBMP. Likewise for the Bankruptcy Court's conclusions about judicial economy and the relative lack of weight due to the state-law nature of asbestos claims, factors that *Robbins* flags for consideration. *See* JA1193.

As for bad faith in filing, the District Court observed that *Carolin* did not support Appellants' motions. *Carolin* did not displace the *Robbins* factors; its discussion of "'good faith' related to relief from automatic stay" was "clearly 'dicta' (in a case involving dismissal of a petition)" and, in any event, supported the Bankruptcy Court's approach. JA1195 (citing and discussing *Carolin*, 886 F.2d at 699). In Judge Bell's view, a bankruptcy court cannot disregard *Carolin* in the automatic-stay context by lifting a stay based solely on a finding of subjective bad faith in filing (divorced from objective futility). JA1195. Particularly if lifting the automatic stay would "in practical effect amount to a dismissal of the bankruptcy petition," as here, a bankruptcy court must, under *Carolin*, "find both objective futility and subjective bad faith to grant relief from the stay related to 'bad faith.'" JA1196; *see* JA1192 (concluding that this would be the "real world consequenc[e]" of granting Appellants' motion). So the Bankruptcy Court "correctly applied *Carolin*." JA1196.

Overall, then, the Bankruptcy Court "did not abuse its discretion under *Robbins* in its balancing of the harm to the Debtor of granting relief from the

automatic stay with the harm to the Appellants in light of all the circumstances and further committed no error of law in its alternate analysis under *Carolin*." *Id.* (footnote omitted).

## STANDARD OF REVIEW

Appellants' Brief (at 27) misstates the standard of review.

This Court "review[s] the judgment of a district court sitting in review of a bankruptcy court de novo, applying the same standards of review that were applied in the district court." *In re Muhs*, 923 F.3d 377, 384 (4th Cir. 2019) (citation omitted). "A decision to lift the automatic stay under section 362 of the [Bankruptcy] Code is within the discretion of the bankruptcy judge" and "may be overturned on appeal only for abuse of discretion." *Robbins*, 964 F.2d at 345. Congress has "granted broad discretion to bankruptcy courts" in this area. *Claughton v. Mixson*, 33 F.3d 4, 5 (4th Cir. 1994).

An abuse of discretion occurs when the court's "conclusion is guided by erroneous legal principles or rests upon a clearly erroneous factual finding." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999) (citation omitted). "[T]he abuse of discretion standard requires a reviewing court to show enough deference to a primary decision-maker's judgment that the court does not reverse merely because it would have come to a different

result in the first instance." *Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 322 (4th Cir. 2008).

"[D]eference . . . is the hallmark of abuse-of-discretion review." *United States v. Smith*, 21 F.4th 122, 138 (4th Cir. 2021) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 143 (1997)). So only in the "rarest of cases" should a lower court's evaluation of the equities be disrupted on appeal. *NAACP v. City of Mansfield*, 866 F.2d 162, 166 (6th Cir. 1989) (quoting *Baja Contrs., Inc. v. City of Chi.*, 830 F.2d 667, 674 (7th Cir. 1987)).

## SUMMARY OF ARGUMENT

Appellants uniquely conceive of motions for stay relief premised on bad-faith filing as legal vagrants, detached both from the *Robbins* standard that governs all other lift-stay motions and from the *Carolin* standard that governs all motions to dismiss premised on bad-faith filing. The Court should apply its settled precedents, reject Appellants' gambit, and affirm.

**I.** The Bankruptcy Court did not abuse its discretion in applying *Robbins* to deny Appellants' motions. *Robbins* controls all lift-stay motions in this Circuit, as this Court and lower courts have long recognized. The Bankruptcy Court was right to apply it and thus to weigh prejudice to the estate against hardship to the movants. It did not clearly err in any finding of fact. And it did not abuse its discretion in its application and discretion-laden balancing of the *Robbins* factors. Nor, notwithstanding Appellants' innuendo, does applying *Robbins* implicate any constitutional concerns.

**II.** The Bankruptcy Court did not err in its application of *Carolin*, either. *Carolin* is this Circuit's test for whether a bankruptcy petition was filed in bad faith. Appellants cannot evade *Carolin* by recaptioning their motions to dismiss as motions for stay relief. Nor did the Bankruptcy Court err by declining to make findings on subjective bad faith in filing bankruptcy on this record and in the unusual posture Appellants chose.

## ARGUMENT

### I. The Bankruptcy Court Did Not Abuse Its Broad Discretion in Its *Robbins* Analysis.

In this Circuit, the discretion-laden *Robbins* test controls motions for relief from the automatic stay "for cause" under § 362(d)(1). The Bankruptcy Court correctly determined that *Robbins* governs and properly exercised its discretion in evaluating and balancing the *Robbins* factors. Appellants' emphasis on DBMP's alleged "bad faith" in filing its Chapter 11 case does not displace *Robbins* or undermine the Bankruptcy Court's exercise of its discretion.

#### A. *Robbins* controls a bankruptcy court's stay-relief analysis.

In *Robbins*, this Court held that, as a matter of "general principles of bankruptcy law," a bankruptcy judge facing a stay-relief motion should "harmonize the interests of both debtor and creditors while preserving the debtor's assets for repayment and reorganization." 964 F.2d at 345. Ultimately, the bankruptcy court "must balance potential prejudice to the bankruptcy debtor's estate against the hardships that will be incurred by the person seeking relief from the automatic stay if relief is denied." *Id.* In service of that determination, courts consider factors including (1) "whether the issues in the pending litigation involve only state law, so the expertise of the bankruptcy court is unnecessary"; (2) "whether modifying the stay will

promote judicial economy and whether there would be greater interference with the bankruptcy case if the stay were not lifted because matters would have to be litigated in bankruptcy court"; and (3) "whether the estate can be protected properly by a requirement that creditors seek enforcement of any judgment through the bankruptcy court." *Id.*

**1.** For the last 30 years, this Court and courts within the Circuit have acknowledged *Robbins* as controlling the lift-stay analysis. *See In re Lee*, 461 F. App'x 227, 234 (4th Cir. 2012) (concluding that "the bankruptcy court and the district court properly considered and applied the relevant factors under *Robbins*" in deciding motion for relief from stay); *In re Wiencko*, 99 F. App'x 466, 469, at *2 (4th Cir. 2004) (*Robbins* controls analysis for relief from automatic stay); *Ivester v. Miller*, 398 B.R. 408, 425-29 (M.D.N.C. 2008) (recognizing *Robbins* as controlling, and affirming denial of stay relief); *In re Ramkaran*, 315 B.R. 361, 364 (D. Md. 2004) (same); *In re Johnson*, 655 B.R. 83, 91-92 (Bankr. D.S.C. 2023) (recognizing *Robbins* as controlling); *In re Nw. Child Dev. Ctrs., Inc.*, 2020 WL 8813970, at *1-2 (Bankr. M.D.N.C. Dec. 17, 2020) (same).

Stay-relief motions arise in an infinite variety of circumstances and contexts, but typically involve circumstances specific to the movant seeking stay relief. For example, the statute expressly contemplates relief when a

particular secured creditor lacks adequate protection in its collateral—such as when the collateral is declining in value and the creditor seeks to foreclose and liquidate the collateral or be compensated for its increased risk. *See* 11 U.S.C. § 362(d)(1). This "is the most common basis for finding cause to grant relief" from the automatic stay. 3 *Collier on Bankruptcy* ¶ 362.07[3][b] (16th ed. 2024). Another recurring stay-relief paradigm is when a spouse requests relief to permit state-court divorce proceedings allocating assets between the moving spouse and the debtor spouse. *See, e.g.*, *Claughton*, 33 F.3d at 4; *Robbins*, 964 F.2d at 343. Such questions of family law provide particular occasion for deferring to state-court expertise. *See Robbins*, 964 F.2d at 346.

The Bankruptcy Court correctly identified *Robbins* as the governing standard for Appellants' motion. *Robbins* described itself as expositing "general principles of bankruptcy law," not as limited in application to only certain kinds of bankruptcies or stay-relief motions. 964 F.2d at 345. So courts have uniformly applied *Robbins* to resolve stay-relief motions in mass-tort bankruptcies like this one. *See* JA274-286 (applying the *Robbins* factors to deny Committee's earlier motion for relief from stay); JA1190 (Judge Bell agreeing that *Robbins*'s applicability to Appellants' motions is "well established"); *Bestwall*, Dkt. 3268, at 77:10-16 (applying the *Robbins*

factors to deny Committee's motion for relief from stay); *Bestwall*, Dkt. 3154, at 70:12-71:8 (same); *Aldrich*, Dkt. 1702, at 70:3-14 (same).

Courts likewise have applied *Robbins* to resolve the full spectrum of arguments for stay relief, including motions premised on bad faith in filing. Alleged bad faith, if relevant at all, fits readily into bankruptcy courts' discretionary balancing of the potential prejudice to the estate and hardship to the creditor. *Ramkaran*, 315 B.R. at 366 (district court concluding that "bad faith is one component of, but not necessarily dispositive of, the balancing test" under *Robbins*); *In re Madden*, 1999 WL 33486095, at *2 (Bankr. D.S.C. Dec. 21, 1999) (acknowledging *Robbins* as controlling motion for stay relief premised on bad faith).

Appellants thus fight against decades of precedent and authority when they argue that the Bankruptcy Court should not have applied *Robbins* because they sought relief based on DBMP's supposed subjective bad faith in filing its bankruptcy case. *See* Br. 26 (arguing that *Robbins* is "superfluous to the bad faith analysis"); Br. 54-55. To support their view, Appellants rely on one out-of-circuit precedent, which pre-dated both *Robbins* and *Carolin* (and which neither of them mentions): the Eleventh Circuit's decision in *In re Dixie Broadcasting, Inc.*, 871 F.2d 1023 (11th Cir. 1989). But *Dixie*, in ruling on a lift-stay appeal, just affirmed a bankruptcy court's "discretionary"

finding that, on the facts there, "bad faith"-in-filing justified lifting the stay. *Id.* at 1026-28. It certainly did not hold that courts *should* (much less *must*) grant stay relief upon a finding of *subjective* bad faith—and regardless, it cannot bind this Court. As Judge Bell explained in affirming here, "*Dixie* is not inconsistent with the ruling here, but instead simply reflects the application of a different court's judgment and discretion to different facts to reach a different result." JA1194. *Dixie* also opined that "the factors used to demonstrate bad faith are the same in both" the lift-stay and the motion to dismiss "contexts"—the *opposite* of Appellants' view. 871 F.2d at 1029.

Nor does Appellants' view make sense. As the District Court recognized, *Robbins* established a framework for considering lift-stay motions regardless of their content, and "nothing in *Robbins* suggests that it cannot or should not be applied to motions where 'bad faith' might be considered." JA1190. *Robbins* instructs courts how to evaluate lift-stay motions no matter the grounds urged, just as the summary-judgment standard controls motions for summary judgment and the preliminary-injunction standard controls motions for preliminary injunctions, regardless of the case's or motion's subject matter. Indeed, even Appellants' amicus agrees that "[t]he governing test for a motion for relief from the stay is set forth in *In re Robbins*," contradicting Appellants' view. Amicus Br. of Off.

Comm. of Asbestos Personal Injury Claimants of DBMP LLC, at 3 ("Amicus Br."). The Bankruptcy Court did not err by identifying as controlling the longstanding *Robbins* balancing framework.

**2.** Appellants similarly contradict *Robbins* and this Circuit's repeated pronouncements—not to mention the uniform view of courts around the country—by arguing that stay relief would be *mandatory* upon a finding of subjective bad faith in a debtor's bankruptcy filing. Br. 53.

*First*, as *Robbins* explained and this Court has confirmed time and again, it is always the case that "[a] decision to lift the automatic stay under section 362 of the Code is within the discretion of the bankruptcy judge" and is reviewed for abuse of discretion. *Robbins*, 964 F.2d at 345; *see, e.g.*, *Claughton*, 33 F.3d at 5. It follows that relief from the automatic stay "is not a matter of right." *In re Secrest*, 453 B.R. 623, 627 (Bankr. E.D. Va. 2011). Courts nationwide say the same. *See, e.g.*, *In re Capitol Food Corp. of Fields Corner*, 490 F.3d 21, 23 (1st Cir. 2007) (reviewing "refusal to . . . grant relief from the automatic stay only for abuse of discretion," and listing a dozen factors informing bankruptcy courts' discretion); *In re Sonnax Indus, Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990) (similar); *In re C&S Grain Co.*, 47 F.3d 233, 238 (7th Cir. 1995) ("The decision as to whether to lift the stay is committed to the discretion of the bankruptcy court."); *In re Conejo Enters.*,

*Inc.*, 96 F.3d 346, 351 (9th Cir. 1996) (similar); *In re Heine*, 2022 WL 883938, at *2 (3d Cir. Mar. 24, 2022) (recognizing bankruptcy courts' "wide latitude" to "balance the equities" in deciding stay-relief motions).

*Second*, the cases Appellants cite (at 53 n.26) about bad faith as cause to lift the stay are beside the point. *None* holds that bankruptcy courts must grant a lift-stay motion upon a finding of subjective bad faith. And all are distinguishable in any event: None involved a "mass tort case[] with tens of thousands of claims pending against the debtor," *Bestwall*, Dkt. 3268, at 80:18-20, and only a few even addressed bad faith in the context of the automatic stay. Most focused on dismissal issues and involved either single-asset debtors seeking to avoid foreclosures or other two-party disputes. *See In re Little Creek Dev. Co.*, 779 F.2d 1068 (5th Cir. 1986) (reversing and remanding order lifting automatic stay to allow secured creditor to foreclose on real property that was debtor's single asset); *Furness v. Lilienfield*, 35 B.R. 1006 (D. Md. 1983) (dismissing bankruptcy case filed to delay a single trial in the district court); *In re Talladega Steaks, Inc.*, 50 B.R. 42 (Bankr. N.D. Ala. 1985) (dismissing bankruptcy case involving dispute between debtor's shareholders and management); *In re Yukon Enters., Inc.*, 39 B.R. 919 (Bankr. C.D. Cal. 1984) (lifting stay to allow foreclosure of real property); *In re Corp. Deja Vu*, 34 B.R. 845 (Bankr. D. Md. 1983) (lifting stay to allow

foreclosure of real-estate project); *In re Victory Constr. Co.*, 9 B.R. 549, 560-61 (Bankr. C.D. Cal. 1981) (lifting stay in case filed to avoid foreclosure of real property), *vacated on other grounds as moot*, 37 B.R. 222 (B.A.P. 9th Cir. 1984); *In re RAD Props., Inc.*, 84 B.R. 827, 829-31 (Bankr. M.D. Fla. 1988) (same).

The Bankruptcy Court thus was right to recognize that *Robbins* provided the discretionary framework for evaluating Appellants' lift-stay motions, and Judge Bell was right to agree. Neither the mass-tort nature of the bankruptcy nor Appellants' allegation of supposed subjective bad faith changes the governing law.

### B. The Bankruptcy Court did not abuse its discretion in its application of *Robbins*.

Having correctly identified the governing law, the Bankruptcy Court did not clearly err in its factual findings (including by supposedly shifting the burden of proof to Appellants) or abuse its discretion in its consideration and balancing of the *Robbins* factors.

**1.** The Bankruptcy Court did not clearly err in any of its *factual findings*—and Appellants largely do not dispute those findings. As to DBMP, the Bankruptcy Court found (and Appellants do not dispute) that it is a defendant in tens of thousands of cases and that, absent the bankruptcy case, "thousands of additional claims" would "likely . . . be filed against" it for

decades. JA229. As to the bankruptcy, the Bankruptcy Court found (and Appellants do not dispute) that the parties have been working toward an estimation of DBMP's liability, in aid of establishing a trust; that such a trust would be a "more efficient means to resolve" asbestos claims for all asbestos claimants; and that DBMP's bankruptcy case is the only proceeding in which DBMP can fairly and equitably treat all current and future claimants. JA280, JA590-592. And as to the claimants, the Bankruptcy Court also found (and Appellants do not dispute) that the Bergrud claims against several other defendants have been resolved and the Herlihy claims against several other defendants are proceeding; that Appellants' counsel sought stay relief in *Bestwall* and *Aldrich* based on similar arguments that those courts rejected, too; and that all of DBMP's other asbestos claimants could make the *same* arguments for stay relief as Appellants do. JA470, JA587-589, JA914, JA919.

Nevertheless, Appellants do dispute the Bankruptcy Court's finding that granting their motions—and permitting them to quantify their claims at trial—would result in effective dismissal of DBMP's bankruptcy. The Bankruptcy Court found, based on its experience and knowledge of this case—including its ruling on the Committee's motion to lift the stay wholesale at the outset of this case—that granting Appellants' motions would prompt the filing of thousands of similar motions, which it would have to

grant. JA919-921; *cf. Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (encouraging courts to draw on "judicial experience and common sense" in assessing complaints); *United States v. Rivera-Santana*, 668 F.3d 95, 105 (4th Cir. 2012) (affirming judge's criminal-sentencing finding, based on "twenty years of judicial experience," regarding defendant's recidivism risk). And the Bankruptcy Court found that parallel litigation on that massive scale would dismember and effectively dismiss the bankruptcy, even if claimants could not collect on their claims right away. JA919-920. Appellants dislike that finding, but they offer no reason it was wrong. Nor could they: They *admit* that they view the bankruptcy case as flawed root and branch, that they filed their lift-stay motions as a substitute for moving to dismiss, and that the motions' goal is dismissal. JA833-834. The Bankruptcy Court's finding was correct and at least reasonable, certainly not clearly erroneous.[1]

---

[1] Appellants' amicus—but not Appellants—points to the granting of a lift-stay motion in the second *LTL* bankruptcy as evidence that lifting a stay for one claimant might not prompt an avalanche of copycat motions. *See* Amicus Br. 5, 17. But that claimant—unlike Appellants—moved based on an individualized set of facts: He had a trial-ready case, whose trial was set to begin less than two weeks after LTL filed its bankruptcy petition; was rapidly declining in health; and had received stay relief to proceed to trial after the Third Circuit ordered dismissal of LTL's first bankruptcy. *In re LTL Mgmt.*, No. 23-12825, Dkt. 71 (Bankr. D.N.J. Apr. 10, 2023); *In re LTL Mgmt.*, No. 21-30589, Dkt. 3771 (Bankr. D.N.J. Feb. 17, 2023). In addition, there was little time or reason for copycat motions: The lift-stay motion was granted while motions to dismiss were being vigorously litigated, and the court

Lacking a reason the Bankruptcy Court's predictive finding was wrong, Appellants instead argue that the Bankruptcy Court erred by shifting the burden of proof on this issue to them. They cite *no* authority for that view. At most, Appellants claim to invoke language in the automatic-stay statute, 11 U.S.C. § 362(g), but that language allocates the burden for an "issue" at a "hearing." Courts have sensibly placed on the movant the burden of first making a *prima facie* showing of the need for a stay. *See Sonnax Indus.*, 907 F.2d at 1285 ("Section 362(d)(1) requires an initial showing of cause by the movant . . . . If the movant fails to make an initial showing of cause, however, the court should deny [stay] relief without requiring any showing from the debtor …."); *In re White*, 410 B.R. 195, 201 (Bankr. W.D.Va. 2008) (Section 362(g) "does not strip the movant of his or her initial burden in filing such motions. In fact, several authorities note clearly that the movant still carries the initial burden of establishing a *prima facie* case …."); *In re Eatman*, 182 B.R. 386, 390 (Bankr. S.D.N.Y. 1995) ("While section 362(g)

---

dismissed the bankruptcy less than three months later. *See In re LTL Mgmt.*, No. 23-12825, Dkt. 1127 (Bankr. D.N.J. July 28, 2023). Those circumstances do nothing to undermine the Bankruptcy Court's forecast here that granting Appellants' motions on non-claimant-specific grounds would prompt a flood of indistinguishable motions in this case with no pending dispositive motions. At most, then, all this reference to *LTL* does is confirm it is reasonable to look to other bankruptcy cases in evaluating the likely effects of granting stay relief—including, here, the six copycat motions filed by overlapping counsel in *Bestwall* and *Aldrich*. *See supra* at 17-20.

allocates the burden of ultimate persuasion, under either ground, the movant must still make a *prima facie* showing that it is entitled to the relief that it seeks.”); *see also* 3 *Collier on Bankruptcy* ¶ 362.10 (16th ed. 2024) (same); *cf. Robbins*, 964 F.3d at 345 (bankruptcy court considers “whether ‘cause’ has been shown”). Appellants cite no evidence they have produced to make a *prima facie* showing on this point.

Regardless, allocation of the burden could not have made a difference, because the Bankruptcy Court’s finding did not turn on the burden of proof. Instead, the Bankruptcy Court relied on its own experience in bankruptcy and mass-tort bankruptcy cases, together with its knowledge of this then-four-year-old case. That enabled an “absolutely certain” predictive judgment that granting Appellants’ motions would result in a flood of similar motions that would have to be granted, and that permitting litigation of thousands of claims would effectively dismiss the bankruptcy. *See* JA920.

**2.** Just as the Bankruptcy Court did not clearly err in its factual findings, it also did not abuse its discretion in *applying and balancing* the *Robbins* factors. *First* and most importantly, the court concluded that granting the motions would not promote but rather would undermine judicial economy. That was because it would prompt thousands of indistinguishable motions, causing piecemeal litigation of thousands of

claims in various state courts around the country—just the result Appellants *admit* they seek. Br. 57-58 (arguing that "*Every claimant* in this non-distressed tort-reform bankruptcy has the right to liquidate/estimate his claim before a jury" and that the automatic stay impermissibly "freezes the rights" of claimants "nationwide") (emphasis added); JA920 (Bankruptcy Court concluding that "it is an absolute certainty that to grant these two motions would lead to hundreds, if not thousands" more motions); JA921 (adopting reasoning on previous motion for stay relief); JA282 (Bankruptcy Court reasoning, in denying previous motion for stay relief, that "[a] case dump of this magnitude . . . would be the furthest thing from judicial economy").

Consideration of judicial economy is *always* forward-looking. And it is always appropriate to consider the presence and likely effect of others who might seek the same relief, even in non-mass-tort cases. *In re Motors Liquidation Co.*, 2010 WL 4630327, at *5 (S.D.N.Y. Nov. 8, 2010) (noting that potential for opening floodgates to claimants with similar allegations is "the very state of affairs the automatic stay was enacted to prevent"); *In re SunEdison, Inc.*, 557 B.R. 303, 308 (Bankr. S.D.N.Y. 2016) ("Granting stay relief to Vivint may encourage other claimants to file their own stay relief motions."). All the more so in mass-tort cases. *See Aldrich*, Dkt. 1702, at

67:8-12 (denying stay-relief motion where, if it were granted, "a substantial number of the claimants, enough to wreck the bankruptcy case, will seek like measure and that effectively precipitates a *de facto* dismissal of the case"); *Bestwall*, Dkt. 3268, at 77:17-78:12 (court "would be obliged" to grant future lift-stay motions raising the same generic bases for relief); *Bestwall*, Dkt. 3154, at 69:23-70:11 (court, if it granted individual claimant's lift-stay motion that lacked any unique facts, would be "hard pressed to deny future motions for relief").

The Bankruptcy Court's assessment, founded on its own experience and its observation that most of the tens of thousands of claimants against DBMP are represented by the same "dozen or so asbestos firms across the country," was not clearly erroneous. JA920. Indeed, Appellants are represented by the same counsel that has appeared in *Bestwall* and *Aldrich* on behalf of other claimants on similar requests for stay-relief. *Aldrich*, Dkt. 2243, at 35; *Bestwall*, Dkt. 3242, at 18; *Bestwall*, Dkt. 3127, at 24-25; *Aldrich*, Dkt. 1588, at 28. And Maune Raichle Hartley French & Mudd, LLC, represents claimants sitting on the committees in DBMP's case, in *Bestwall*, and in *Aldrich*. Dkt. 155 (order appointing committee); *Aldrich*, Dkt. 147 (same); *Bestwall*, Dkt. 348 (same).

Appellants still have not explained how the Bankruptcy Court, if it granted their motions, might deny the next lift-stay request without abusing its discretion. Their motions involve *no* "specific facts of a particular claim," and their arguments effectively concede this by attacking the case as a whole. *Bestwall*, 71 F.4th at 183.[2] The Bankruptcy Court thus would have erred had it *not* considered the practical consequences of granting Appellants' motions on grounds that all other claimants could copy, given the mass-tort nature of the bankruptcy and given that the arguments for lifting the stay applied to all claimants and targeted the entire case.

*Second,* the Bankruptcy Court did not abuse its discretion by concluding that the prejudice to DBMP and the bankruptcy case outweighed any prejudice to Appellants. Denying stay relief would affect Appellants only by arguably delaying their ability to quantify their claims against DBMP, but any such delay for claimants is inherent in every bankruptcy and does not on its own justify relief from the automatic stay. JA279-281.

---

[2] When DBMP did receive a request to lift the automatic stay based on specific facts of a particular claim, it consented, and the Bankruptcy Court granted relief. The court allowed a state supreme court to dispose of an appeal and the court on remand to dispose of the matter, given that the judgment was supported by an appellate bond and would not adversely affect the bankruptcy estate. *See* Dkt. 542.

Delay inherent in the bankruptcy is an especially unpersuasive justification for stay-relief here. *First,* Appellants are proceeding or have already proceeded against all other defendants, and DBMP historically has provided just a sliver of an asbestos claimant's recovery. *Supra* at 9. *Second,* even as to Appellants' desire to top-off their recovery by proceeding to trial on their claims against DBMP, they seek only to liquidate their claims, not to recover on them now, which means they identify no real-world harms that granting their motions would alleviate. *Third*, in any event, as to actually recovering on their asbestos claims, they deny any concern that DBMP would fail to pay them, *e.g.*, Br. 35 n.17, 54; and overlook that a § 524(g) trust is a faster and more reliable way to do so. *Supra* at 6-7, 20; JA1208 (District Court accepting finding that it was "likely … that claimants would receive payment in the bankruptcy"). *Finally*, the bankruptcy's duration is largely attributable to claimants, not to DBMP. *See* JA290 (finding that DBMP has diligently attempted to move the case forward); JA924 (warning Appellants for continuing to "beat your head against a rock" by filing "rehashes of arguments previously made and rejected" in *DBMP*, *Bestwall*, and *Aldrich* in "a waste of everyone's time"); *cf. Bestwall*, 71 F.4th at 183-84 (observing that "the main interference with the timely resolution of the claims in Bestwall's bankruptcy" came from "Claimant Representatives' counsel" who

"relentlessly attempted to circumvent the bankruptcy proceeding"); *Aldrich*, 2023 WL 9016506, at *32 (finding no unreasonable delay by debtors, including because "at every opportunity [the official committee and claimant law firms] have sought to force dismissal").

Exercising its discretion to perform the balancing directed by *Robbins*, the Bankruptcy Court found that the risk of prejudice to the bankruptcy case—the likelihood that granting the motions would result in effective dismissal of the case—far outweighed the risk of prejudice to Appellants—their largely self-inflicted potential delay of a likely marginal recovery against DBMP. That balance weighed against granting Appellants' motions, and the Bankruptcy Court did not abuse its discretion in assessing the balance.

**3.** Last, *Robbins* does not implicate the Seventh Amendment or bankruptcy courts' subject-matter jurisdiction. Appellants sometimes suggest constitutional concerns from a straightforward application of *Robbins* on these facts. *See* Br. 33 (asserting without citation that it would not "survive Constitutional review" to "extend[ ] the protections of the Bankruptcy Code to successful, profitable businesses seeking a better deal on liabilities they can pay in full"), 45 (asserting without citation and without addressing text of § 524(g) that "Congress never empowered Article I courts to 'overcome the tort system' via the Bankruptcy Code"), 58 (mentioning the

"Seventh Amendment" and "federalism principles"). Appellants also sometimes allude to concerns with bankruptcy courts' jurisdiction over bankruptcy cases like DBMP's. *See* Br. 27 (complaining that the "Bankruptcy Court's ruling mutates Article I courts into tribunals of unlimited jurisdiction"), 28 ("This appeal touches on . . . limits on federal jurisdiction"), 56 n.27 (mentioning limits on diversity jurisdiction), 58 (complaining that *Robbins* does not permit a bankruptcy court to "assess[] the propriety of its own jurisdiction").

The Court should reject those "passing shot[s]" as waived because Appellants do not develop them with explanation or authority. *See, e.g.*, *Schulman v. Axis Surplus Ins. Co.*, 90 F.4th 236, 245 n.5 (4th Cir. 2024) (A party "waives an argument by failing to present it in its opening brief or by failing to develop its argument—even if its brief takes a passing shot at the issue.").

Regardless, Appellants' arguments also wilt on the merits. Their occasional references to the Seventh Amendment ignore their concession that federal bankruptcy statutes "expressly guarantee[]" a right to jury trials for personal-injury and wrongful-death claims like the Bergrud and Herlihy claims. Br. 3, 54; *see id.* at 17 & n.10; 28 U.S.C. §§ 157(b)(5), 1411; *supra* at 7. Appellants' passing reference to *Ortiz v. Fibreboard Corp.* cuts against any

concerns. There, the Supreme Court restricted "limited fund" class actions in asbestos litigation to keep parties from *circumventing* bankruptcy with its substantial "protections for creditors." 527 U.S. 815, 843, 860 n.34 (1999); *see* Br. 45. And despite their allusions to subject-matter jurisdiction concerns, Appellants here do not contend that the Court lacks jurisdiction or purport to challenge any statutory grants of jurisdiction to bankruptcy courts. In particular, Appellants do not purport to raise arguments seeking to limit bankruptcy courts' jurisdiction akin to those the Court is considering in the direct appeal of the denial of the fourth motion to dismiss *Bestwall LLC v. Off. Comm. of Asbestos Claimants*, No. 24-1493.

The Court need not tarry on Appellants' supposed constitutional or jurisdictional concerns with the Bankruptcy Court's application of *Robbins*.

## II. The Bankruptcy Court Properly Considered *Carolin* in Response to Appellants' Bad-Faith-Filing Arguments.

The Bankruptcy Court likewise did not err in handling Appellants' allegations of subjective bad faith in filing for bankruptcy. *Carolin* provides the test for whether a bankruptcy petition was filed in "bad faith," no matter whether bad-faith-filing arguments are presented in a motion to dismiss or in a motion for stay relief. The Bankruptcy Court correctly identified and employed *Carolin* as the governing standard.

### A. *Carolin* controls analysis of a claimed bad-faith filing.

The Fourth Circuit's two-part test for assessing whether a bankruptcy case was filed in bad faith, most prominently articulated in *Carolin*, requires *both* objective futility and subjective bad faith to permit dismissal of a bankruptcy case as a bad-faith filing. *Carolin*, 886 F.2d at 694, 701. This Court and courts within this Circuit regularly apply *Carolin* to evaluate arguments that a bankruptcy case was filed in bad faith. *See, e.g.*, *Bestwall*, 71 F.4th at 182; *Premier*, 492 F.3d at 279-80; *Singh v. Fitzgerald*, 2020 WL 6268538, at *1 (E.D. Va. Sept. 23, 2020), *aff'd*, 848 F. App'x 545 (4th Cir. 2021); *Rain Tree Healthcare of Winston-Salem, LLC v. J & F Partners, LLC*, 585 B.R. 777, 782 (M.D.N.C. 2018); *In re Palmetto Interstate Dev. II, Inc.*, 653 B.R. 230, 240-41 (Bankr. D.S.C. 2023); *In re Byung Mook Cho*, 581 B.R. 452, 466 (Bankr. D. Md. 2018).

The *Carolin* framework applies not just to motions to dismiss premised on bad-faith filing, but also to other motions, such as motions for stay relief, that argue for procedural relief based on a supposedly bad-faith filing. *See Ramkaran*, 315 B.R. at 365 (*Carolin*'s "strict standard for the use of bad faith as a basis for dismissal applies equally" to stay-relief motion); *Bestwall*, Dkt. 3268, at 79:15-80:9; *Madden*, 1999 WL 33486095, at *2 (applying *Carolin* in denying motion for relief from the automatic stay premised on the debtor's

alleged bad faith in filing the case); *In re Dunes Hotel Assocs.*, 188 B.R. 162, 169 n.12 (Bankr. D.S.C. 1995) (holding that *Carolin*'s "stringent two-prong test applies to [movant's] alternative request for stay relief on the basis of bad faith"); *see also Little Creek*, 779 F.2d at 1072 (looking to objective futility in resolving a motion for stay relief premised on bad faith); *In re Albany Partners, Ltd.*, 749 F.2d 670, 673 (11th Cir. 1984) (same). As discussed already, bankruptcy courts in this Circuit, in *Bestwall* and *Aldrich*, have *repeatedly* applied *Carolin* to resolve motions pressing the same bad-faith-filing theory—contradicting Appellants' odd assertion that courts have "steadfastly refused" to pass on bad faith. Br. 44; *see supra* at 15-16, 18-19; *see also Bestwall*, 2023 WL 7361075, at *5 (considering *Carolin* in denying leave to appeal denial of dismissal).

It is especially inevitable that *Carolin* governs allegations of bad-faith filing in stay-relief motions, like Appellants' motions, that pursue an effective dismissal. Appellants *tout* their intention for the lift-stay motions to dismantle DBMP's bankruptcy. *See, e.g.*, Br. 56 (arguing that this case does not "belong[] in court in the first place"). Indeed, they *admit* they chose to couch their bad-faith arguments in lift-stay motions instead of motions to dismiss simply to ensure immediate appellate review. *See* JA833-834 ("[t]he motion was filed specifically to frame the issue of subjective bad faith before

the Court . . . in a format that is, unquestionably, immediately appealable"); JA836 ("we ask that your Honor . . . rule on the merits so we can get the issue before the appellate court").

As the Bankruptcy Court observed, granting Appellants' motions would effectively dismiss DBMP's bankruptcy given the mass-tort nature of the bankruptcy. JA919-921. The court thus refused Appellants' invitation to do indirectly what it could not do directly: dismiss a bankruptcy case as filed in "bad faith" solely because of (supposed) subjective bad faith in filing, even though the case is not objectively futile. That refusal was proper. *Carolin* set out a substantive rule of law that does not depend on the procedural vehicle in which allegations of bad-faith filing arise, and its holding would mean little if litigants could circumvent it so long as they do not file a document captioned as a motion to dismiss.

Appellants sometimes appear to argue that *Carolin* does not supply the standard for determining whether a bankruptcy was filed in bad faith even for a motion to dismiss, for example by relying extensively on *Premier Auto*. *See, e.g.*, Br. 34-36. But *Premier* applied *Carolin* to dismiss a bankruptcy case after finding *both* objective futility and subjective bad faith; it did not purport to and could not have rejected or revised the *Carolin* precedent. 492 F.3d at 280-82. Appellants similarly emphasize the district-court decision in

*Furness v. Lilienfield*, 35 B.R. 1006 (D. Md. 1983). *See, e.g.*, Br. 1, 22 & n.13, 40. But *Furness* preceded the circuit precedent in *Carolin*, and *Carolin* did not endorse, rely on, or even cite *Furness*. Nor can *Furness* be reconciled with *Carolin*: While *Furness* did not set out a rule for determining whether a bankruptcy was filed in bad faith, it did treat the *Johns-Manville* bankruptcy as a paradigm for an *illegitimate* use of bankruptcy—even though *Johns-Manville* is now viewed, even by Appellants, as *foundational*, particularly for a case employing § 524(g). *See* Br. 39 n.19 (acknowledging this); H.R. Rep. No. 103-835, at 40 (1994) ("The procedure [in what is now § 524(g)] is modeled on the trust/injunction in the Johns-Manville case, which pioneered the approach a decade ago in response to the flood of asbestos lawsuits it was facing.").

Appellants also invoke *Carolin*'s remark that relief from the automatic stay may be available to creditors who are "entangled in hopeless Chapter 11 cases." Br. 49 (quoting *Carolin*, 886 F.2d at 700). But *Carolin* involved a motion to dismiss, so the Court's asides about stay-relief motions were *dicta*, as the District Court explained. *See Carolin*, 886 F.2d at 694, 699-700; JA1195. And regardless, the asides support *DBMP*, not Appellants. The passing reference to "hopeless" cases was describing *objectively futile* ones—the very consideration the Appellants wrongly would have the Court ignore.

*See* 886 F.2d at 700 (for dismissal, requiring "something more" than hopelessness, namely "subjective bad faith"). And, as Judge Bell further recognized, this Court in *Carolin* "specifically describe[d] situations—like that found by the bankruptcy court here—in which the lifting of the stay would be tantamount to a dismissal of the petition, and thus require a showing of both objective futility and subjective bad faith." JA1195; *see also Ramkaran*, 315 B.R. at 365 (concluding from 886 F.2d at 694 & 699 that "the *Carolin* court plainly believed that the same cautious standard" for dismissal based on a bad-faith filing "should also be applied to" stay relief on such basis).

In sum, the Bankruptcy Court correctly determined that *Carolin*'s two-pronged standard—requiring both objective futility and subjective bad faith to find that a case was filed in bad faith—applied to the Appellants' lift-stay motions. Appellants have no authority and no persuasive argument to the contrary.

### B. The Bankruptcy Court properly applied *Carolin* in light of the procedural posture and Appellants' attempts at circumvention.

The Bankruptcy Court also did not abuse its discretion by limiting its analysis of the *Carolin* standard given its decision on objective futility, the

contorted procedural posture Appellants chose, and the thin record they cultivated.

*First*, the Bankruptcy Court did not need to decide whether DBMP filed in subjective bad faith (*Carolin*'s second element) because this bankruptcy is not objectively futile (*Carolin*'s first element). The Bankruptcy Court found, in denying the Committee's earlier motion for stay relief, that DBMP "has the financial ability to appropriately fund a § 524(g) trust and to pay the administrative costs of" its case. JA289. It adopted that finding in denying Appellants' motions. JA921. Under *Carolin*, that finding—which Appellants embrace rather than disputing, *e.g.*, Br. 33, 61—means that DBMP's case pursuing resolution under § 524(g) is not objectively futile and that it was not filed in bad faith. *See also Bestwall*, 605 B.R. at 49 (so reasoning in similar case, including because similar magnitude of current and expected claims was "sufficient financial distress … to seek resolution under section 524(g)"). The Bankruptcy Court recognized this too. JA923. So it had no obligation to prolong its ruling by adding *dicta* about subjective bad faith that could not have affected its *Carolin* determination. *See, e.g.*, *Patel v. Garland*, 596 U.S. 328, 332 (2022) (no need to address eligibility for a form of immigration relief if denial would be appropriate regardless of eligibility); *Educ. Media Co. at Va. Tech, Inc. v. Insley*, 731 F.3d 291, 298 n.4 (4th Cir.

2013) (no need to address a question about differences between tiers of constitutional scrutiny rendered superfluous by other holdings); *Bestwall*, 605 B.R. at 50-51 ("Because the Court concludes this case is not objectively futile, it need not (and does not) reach the issue of whether this case was filed in subjective bad faith.").

*Second*, the Bankruptcy Court appropriately took into account the procedural posture that Appellants created by choosing to press dismissal arguments via lift-stay motions and despite pending adversary proceedings involving similar issues. JA921, JA923-924. A motion to dismiss squarely presenting the supposedly dispositive ground, not piecemeal litigation by individual claimants working that ground into a balancing test, is the proper way to try to dismiss a bankruptcy. Further complicating the procedural posture, the same issues are being pressed and developed in the pending adversary proceedings, where they will be presented and resolved without procedural complications. The Bankruptcy Court was well within its discretion in declining to short-circuit those proceedings that the Claimant Representatives themselves initiated.

*Third*, the Bankruptcy Court's decision not to focus on Appellants' assertions of subjective bad faith in filing was also well within its discretion because Appellants have presented no evidence—only rhetoric—to begin to

make a *prima facie* showing that DBMP did file in subjective bad faith. Appellants rely on DBMP's ability to *fully fund* a § 524(g) trust to *pay claimants*. *E.g.*, Br. 23. That is odd logic, and the Bankruptcy Court correctly recognized that filing for bankruptcy absent "financial distress" (as the Third Circuit used that term in *LTL*) does not in itself amount to subjective bad faith in this Circuit. JA922-923; *cf. Bestwall*, 71 F.4th at 174, 175-76, 183 (recognizing business reasons for corporate restructuring and bankruptcy filing in similar case). In any event, the Bankruptcy Court has not made findings regarding financial distress (and, contrary to Appellants' uncited assertion, Br. 41, DBMP has never conceded lack of financial distress). Moreover, DBMP filed for bankruptcy (in early 2020) only *after* a bankruptcy court in this Circuit, in *Bestwall*, had denied a motion to dismiss that similar case as a bad-faith filing and this Court had declined to directly review that denial (both in the second half of 2019). *Supra* at 15-16.

In arguing the opposite, Appellants ignore multiple cases involving solvent debtors, each of which had been defending and paying claims in the tort system, that resulted in claimant-supported and court-approved asbestos trusts established under a § 524(g) plan of reorganization. *See In re Mid-Valley, Inc.*, 305 B.R. 425, 429-31 (Bankr. W.D. Pa. 2004) (bankruptcy court stating that the "fact of solvency does not require a finding that the

bankruptcy filing was in bad faith"); *In re N. Am. Refractories Co.*, No. 02-20198 (Bankr. W.D. Pa.); *In re Garlock Sealing Techs. LLC*, No. 10-31607 (Bankr. W.D.N.C.); *In re W.R. Grace & Co.*, Nos. 01-1139, 1140 (Bankr. D. Del.); *In re USG Corp.*, No. 01-2094 (Bankr. D. Del.); *In re United Gilsonite Lab'ys*, No. 11-2032 (Bankr. M.D. Pa.)). And Johns-Manville, which as noted was the foundational case for § 524(g), involved a solvent debtor. *See Kane v. Johns-Manville Corp.*, 843 F.2d 636, 639 (2d Cir. 1988). As one court recently summarized the law in this area: "Congress recognized that while an asbestos bankruptcy differs from a 'classic' bankruptcy with an insolvent or near-insolvent debtor, it is still a forward-looking solution meant to treat fairly all parties in interest. That is the hallmark purpose of chapter 11. *That is not a 'bad faith' motive*." *In re Honx, Inc.*, 2022 WL 17984313, at *2 (Bankr. S.D. Tex. Dec. 28, 2022) (emphasis added).

Appellants also invoke, but misuse, the "new debtor syndrome" label to undermine the Bankruptcy Court's treatment of bad faith. "New debtor syndrome" does not refer to all pre-bankruptcy corporate restructuring. *See, e.g.*, 11 U.S.C. § 524(g)(4)(A)(ii)(IV) (contemplating a pre-bankruptcy "transaction changing the corporate structure"). Instead, it refers to efforts to avoid a creditor's impending foreclosure on a business's single significant asset. *See Carolin*, 886 F.3d at 704 (describing new debtor syndrome as a

"recurring pattern" that is "characterized by the creation" of a "one-asset entity on the eve of foreclosure for the sole purpose of isolating investors from the insolvent property and its creditors" (alteration and quotation marks omitted)); *Little Creek*, 779 F.2d at 1073 & n.3 (similar, and collecting cases). The "new debtor syndrome" label and its underlying concern are not present here, where the restructuring did not diminish the debtor's paying power (given the Funding Agreement) and did enable efficiently pursuing the legitimate objective of forming and funding a § 524(g) trust to resolve myriad claims. *See Honx*, 2022 WL 17984313, at *2; JA1211.

Appellants likewise suggest DBMP's supposed goals for the bankruptcy are bad-faith ones: (a) delaying recovery for claimants, (b) saving money DBMP would otherwise spend on defending against and paying claimants in asbestos tort claims, and (c) forcing Appellants to engage in "judicially compelled negotiations." Br. 41, 51-52. But asbestos claimants can and do proceed against all other defendants, as Appellants' own litigation illustrates, so DBMP's bankruptcy at most delays claimants from recovering marginal damages, and § 524(g) trusts are long established as providing claimants a more likely and faster recovery than the tort system.

DBMP's bankruptcy has not saved it money, either. The bankruptcy case itself carries tremendous costs (including funding a team of

professionals for both Claimant Representatives) on par with, or more than, DBMP's annual pre-bankruptcy defense expenditures. If the bankruptcy fails, DBMP will have paid those costs *plus* having to pay afterward the same defense costs it would have faced absent the bankruptcy. And if the bankruptcy succeeds, the resulting trust will of course have to be funded sufficiently to pay current and future claims under terms of a plan to which a supermajority of claimants agreed, all in addition to the costs of the bankruptcy itself. That means the bankruptcy makes little sense as a mere strategy for saving costs from paying claims. Nor, of course, does DBMP's bankruptcy seek to "overcome the tort system," Br. 14, except in the sense that, again, Congress created § 524(g) trusts as a more efficient and effective means of resolving asbestos claims than piecemeal, inevitably drawn-out litigation.

Last, DBMP's bankruptcy does not force Appellants or anyone else into "judicially compelled negotiations." Br. 41. As Appellants agree, they retain the ultimate right to present their claims against DBMP to a jury, *whether or not* DBMP successfully confirms a § 524(g) trust. Br. 3, 17, 54. And even as to negotiating the plan, § 524(g) with its requirement of a 75% supermajority of claimants hardly leaves them unarmed in negotiations, particularly by comparison to a typical, non-asbestos bankruptcy.

*        *        *

In sum, the Bankruptcy Court correctly identified the governing standard for lift-stay motions—*Robbins*—and did not abuse its discretion in determining that granting the motions would prejudice the estate far more than denying the motions would cause hardship for Appellants. Likewise, as to Appellants' bad-faith-filing arguments in support of lifting the automatic stay, the Bankruptcy Court correctly identified the governing standard—*Carolin*—and determined that DBMP's bankruptcy was not filed in bad faith.

## CONCLUSION

The Court should affirm the District Court's decision affirming the Bankruptcy Court's denial of motions to lift the automatic stay.

Dated: January 29, 2025

Respectfully submitted,

/s/ *C. Kevin Marshall*

C. Kevin Marshall
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001
Telephone: (202) 879-3939
ckmarshall@jonesday.com

Garland S. Cassada
Richard C. Worf, Jr.
ROBINSON, BRADSHAW & HINSON, P.A.
101 North Tryon Street, Suite 1900
Charlotte, North Carolina 28246
Telephone: (704) 377-2536
gcassada@robinsonbradshaw.com
rworf@robinsonbradshaw.com

Gregory M. Gordon
JONES DAY
2727 North Harwood Street, Suite 500
Dallas, Texas 75201
Telephone: (214) 220-3939
gmgordon@jonesday.com

Jeffrey B. Ellman
JONES DAY
1221 Peachtree Street, N.E., Suite 400
Atlanta, Georgia 30361
Telephone: (404) 521-3939
jbellman@jonesday.com

Sarah Welch
JONES DAY
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-7401
swelch@jonesday.com

## CERTIFICATION

In accordance with the Federal Rules of Appellate Procedure and the Local Rules of this Court, I hereby certify that this Brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 12,684 words, excluding the parts exempted by Fed. R. App. P. 32(f). This Brief has been prepared in a proportionally spaced 14-point Georgia font in the text and footnotes, using Microsoft Word. This certification has been prepared in reliance on the word-count function of Microsoft Word.

/s/ *C. Kevin Marshall*

## CERTIFICATE OF SERVICE

I hereby certify that, on January 29, 2025, I filed the foregoing using this Court's CM/ECF system, which effected service on all parties.

/s/ *C. Kevin Marshall*