# United States Court of Appeals
# for the Fourth Circuit

MICHAEL N. HERLIHY; ANN HERLIHY;
THE ESTATE OF PETER L. BERGRUD,

*Claimants-Appellants,*

v.

DBMP LLC,

*Debtor-Appellee.*

On Appeal from the United States District Court
for the Western District of North Carolina
Case No. 24-00558 (KDB), Hon. Kenneth D. Bell

**AMICUS BRIEF OF THE OFFICIAL COMMITTEE OF ASBESTOS
PERSONAL INJURY CLAIMANTS IN *IN RE DBMP LLC*
IN SUPPORT OF APPELLANTS' PETITION FOR REHEARING EN BANC**

KEVIN C. MACLAY
TODD E. PHILLIPS
JEFFREY A. LIESEMER
CAPLIN & DRYSDALE, CHARTERED
1200 New Hampshire Ave. NW, 8th Floor
Washington, DC 20036
Telephone: (202) 862-5000
Facsimile: (202) 429-3301

NATALIE D. RAMSEY
DAVIS LEE WRIGHT
ROBINSON & COLE LLP
1201 North Market Street, Suite 1406
Wilmington, Delaware 19801
Telephone: (302) 516-1700
Facsimile: (302) 516-1699

*Co-Counsel for the Official Committee of Asbestos Personal
Injury Claimants of DBMP LLC, as Amicus Curiae*

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __24-2109__     Caption: __Michael & Ann Herlihy; Estate of Peter Bergrud v. DBMP LLC__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Official Committee of Asbestos Personal Injury Claimants of DBMP LLC__
(name of party/amicus)

_____

 who is _____amicus curiae_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.     Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.     Does party/amicus have any parent corporations?                          ☐YES ☑NO
       If yes, identify all parent corporations, including all generations of parent corporations:

3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                    ☐YES ☑NO
       If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☑ YES ☐ NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐ YES ☑ NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Jeffrey A. Liesemer          Date:          3/4/2026

Counsel for: Official Committee of Asbestos Personal Injury Claimants of DBMP LLC

# **TABLE OF CONTENTS**

Identity and Interest of Amicus Curiae.......................................................................1

Preliminary Statement.............................................................................................2

Argument................................................................................................................3

I.  This Circuit Is Ground Zero for the Texas Two-Step's Abuse of
    Bankruptcy .................................................................................................3

II. This Case Squarely Presents for En Banc Review this Circuit's Standard
    for a Lack of Good Faith ..............................................................................8

Conclusion ..........................................................................................................10

Certificate of Compliance ....................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aldrich Pump LLC*,
  No. 20-30608, 2023 WL 9016506 (Bankr. W.D.N.C. Dec. 28,
  2023) ..............................................................................................6, 8, 9

*Carolin Corp. v. Miller*,
  886 F.2d 693 (4th Cir. 1989) ........................................................2, 6, 9, 10

*In re Cedar Shore Resort, Inc.*,
  235 F.3d 375 (8th Cir. 2000) ...................................................................7

*In re Cohoes Indus. Terminal, Inc.*,
  931 F.2d 222 (2d Cir. 1991) ....................................................................7

*Harrington v. Purdue Pharma L.P.*,
  603 U.S. 204 (2024) ..................................................................................5

*In re LTL Management, LLC*,
  64 F.4th 84 (3d Cir. 2023) .......................................................................7

*Marrama v. Citizens Bank of Mass.*,
  549 U.S. 365 (2007) ..................................................................................5

*Off. Comm. of Asbestos Claimants v. Bestwall LLC*,
  No. 3:19-CV-00396-RJC, 2023 WL 7361075 (W.D.N.C. Nov. 7,
  2023) ........................................................................................................7

*In re Premier Auto. Servs., Inc.*,
  492 F.3d 274 (4th Cir. 2007) ................................................................2, 6, 9

*In re Robbins*,
  964 F.2d 342 (4th Cir. 1992) ...................................................................8

*Safety-Kleen, Inc.* (*Pinewood*) *v. Wyche*,
  274 F.3d 846 (4th Cir. 2001) ...................................................................7

*Williford v. Armstrong World Indus., Inc.*,
  715 F.2d 124 (4th Cir. 1983) ...................................................................6

**Statutes**

11 U.S.C. § 105(a) ...................................................................................4

11 U.S.C. § 362 .......................................................................................4

11 U.S.C. § 362(d) ..................................................................................9

11 U.S.C. § 362(d)(1)..............................................................................1

11 U.S.C. § 524(g) ...............................................................................4, 9

11 U.S.C. § 1102 .....................................................................................1

11 U.S.C. § 1112(b) ............................................................................7, 9

**Other Authorities**

Fed. R. App. P. 29(a)(4)(E).....................................................................1

Fed. R. App. P. 40(b)(2)(A)....................................................................3

## **IDENTITY AND INTEREST OF AMICUS CURIAE**[1]

The Official Committee of Asbestos Personal Injury Claimants of DBMP LLC ("**Committee**") is a statutory creditors' committee appointed in this chapter 11 case under 11 U.S.C. § 1102 to represent the interests of current claimants who were injured by the asbestos torts of the Debtor's predecessor, CertainTeed Corp. The Committee submits this amicus brief in support of Appellants' petition for rehearing en banc. The Committee is concurrently filing a motion for leave in accordance with Rule 29(b)(2) of the Federal Rules of Appellate Procedure.

Appellants ask that this Court reconsider en banc the decision of a divided panel of this Court that an entity with a conceded ability to fully and timely pay its asbestos liabilities can nevertheless "weaponize Chapter 11's powerful tools," including the automatic stay, to indefinitely delay asbestos claimants' day in court. Pet. 1. Appellants contend that such an entity necessarily acts in bad faith and thus cannot bear its burden of showing there is no "cause" to lift the automatic stay under 11 U.S.C. § 362(d)(1). *Id.* at 3.

This appeal has ramifications beyond Appellants' own claims. That is because an en banc decision vacating the Panel's ruling and reversing the bankruptcy court below will very likely expedite the resolution of this case and the three other

---

[1]  No party's counsel authored this brief in whole or in part, and no entity or person, aside from amicus curiae, its members, or its counsel, contributed any money to fund the preparation or submission of this brief. Fed. R. App. P. 29(a)(4)(E).

"Texas Two-Step" bankruptcies pending in this Circuit and facilitate the timely resolution of asbestos claims. The Committee supports Appellants' petition. This Court sitting en banc should correct the Panel's decision that affirmed the denial of Appellants' lift-stay motion.

## PRELIMINARY STATEMENT

The Fourth Circuit has "become the 'safe haven' for ultra-wealthy corporations seeking to evade asbestos-related civil tort liability under the guise of the Bankruptcy Code." Dissent 21. This case is but one of several where profitable corporate enterprises have used a novel provision of Texas law to isolate disfavored tort liabilities from profitable assets and strand their tort victims in the Western District of North Carolina bankruptcy court for years. Meanwhile, the business enterprise's shareholders continue to receive billions in value from the severed assets. To make matters worse, this is not the result of a deliberate legislative policy choice. It is instead the result of confusion around the simple precept that a "financially healthy compan[y] with no need to reorganize under the protection of Chapter 11" cannot don bankruptcy protections in good faith. *In re Premier Auto. Servs., Inc.*, 492 F.3d 274, 280 (4th Cir. 2007) (citation omitted).

Appellants argue that the Panel compounds this confusion in a decision that "effectively overrules *Premier*" and "ignores *Carolin*" to land at a position where the purpose of the Bankruptcy Code in this Circuit is no longer to "resuscitat[e] a

financially troubled debtor." Pet. 14 (citing *Carolin Corp. v. Miller*, 886 F.2d 693, 701 (4th Cir. 1989)). The Committee agrees with Appellants that if the Panel's decision stands, it will upset the uniformity of this Court's decisions, clearly meriting en banc review. *See* Fed. R. App. P. 40(b)(2)(A). This Court should take action to stem the "deluge of similar 'Texas Two-Step' bankruptcies that are yet pending in the Western District of North Carolina's bankruptcy court." Dissent 53 n.13. The petition for rehearing en banc should be granted.

## ARGUMENT

### I. This Circuit Is Ground Zero for the Texas Two-Step's Abuse of Bankruptcy

According to the Debtor itself, it is not in financial distress: it has repeatedly asserted that it can fully satisfy any payment obligations to asbestos claimants, inside or outside of bankruptcy, thanks to the funding agreement between itself and its highly profitable operating affiliate, CertainTeed LLC. *See, e.g.*, JA1068, JA237-238. The Debtor is in bankruptcy for one purpose: to force asbestos victims into CertainTeed's favored forum so they can be strong-armed into accepting a capped settlement on CertainTeed's terms. This is the heart of the Texas Two-Step, which violates fundamental principles of bankruptcy and equity. It is also running rampant in this Circuit.

The Texas Two-Step specifically refers to a set of legal maneuvers whereby a wealthy corporation uses Texas law to split itself into two companies. One receives

the vast majority of the assets ("GoodCo"), and the other receives all the asbestos liabilities ("BadCo"). BadCo then seeks relief in bankruptcy while GoodCo continues to operate outside of bankruptcy—unencumbered by bankruptcy's burdens and obligations. GoodCo nevertheless maintains a short leash over BadCo's bankruptcy via a funding agreement that is designed to fund a trust under 11 U.S.C. § 524(g) *if and only if* GoodCo and its affiliates get released from all asbestos liability.[2] JA238-241 (outlining this arrangement).

These maneuvers are designed to "isolate the asbestos liabilities in a single affiliated corporation and file it in chapter 11" while simultaneously granting GoodCo an indefinite payment holiday from paying asbestos claims in the tort system. JA232. The linchpins to this scheme are two related provisions of bankruptcy law: the automatic stay (§ 362) and the preliminary injunction (11 U.S.C. § 105(a)). The automatic stay shields the debtor from any litigation related to prepetition claims while the bankruptcy case is pending and can even protect nondebtors in certain circumstances (i.e., where the litigation involves the claims or property of the debtor). The preliminary injunction granted by the bankruptcy court prevents claimants from pursuing GoodCo and other affiliates under additional theories of liability. These extraordinary powers were intended to

---

[2]  Given the insider relationships and conflicts of interest generally involved in these funding agreements, their enforceability is often in serious contention. JA237-238 (finding such conflicts here).

allow the "honest but unfortunate debtor" to obtain a "fresh start" and maximize recovery for creditors. *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007). But, in Two-Step bankruptcies, these tools have become a weapon wielded against sick and dying asbestos claimants.

Together, the stay and preliminary injunction trap asbestos victims in bankruptcy and protect not only the debtor, but the entire corporate enterprise, until a chapter 11 plan is confirmed. But, because the typical burdens of bankruptcy no longer apply, the operational side of the business can avoid bankruptcy's transparency requirements, take on senior debt, engage in non-ordinary-course transactions without court approval, and continue to pay both non-tort creditors and shareholders. This violates bankruptcy's fundamental precept that a prospective debtor must subject both its liabilities *and* its assets to bankruptcy oversight and administration as a condition of filing for bankruptcy. *See Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 209 (2024) ("A debtor can win a discharge of its debts if it proceeds with honesty and places virtually all its assets on the table for its creditors."). Asbestos victims in a Texas Two-Step are left with a dilemma: fight this false bankruptcy for years or accept the debtor's low-ball settlement offer. As a result, these bankruptcies become interminably long. DBMP is one of *four* major corporations to use the Texas Two-Step in this Circuit, every one of which has

languished in bankruptcy for more than a half-decade, with asbestos victims no closer to the resolution of their claims.[3]

It is difficult, if not impossible, to square this emerging Two-Step trend with this Court's language in *Premier*, where it noted that a debtor not "experiencing financial difficulties . . . alone may justify dismissal" of the Chapter 11 petition. *Premier*, 492 F.3d at 280; *see also Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127-28 (4th Cir. 1983) (finding it a "manifest injustice" to value "the practical problems imposed by the proceedings in bankruptcy" over "the human aspects of the needs of a plaintiff in declining health"). And yet several bankruptcy courts have interpreted this Court's earlier precedent in *Carolin* as precluding dismissal for bad faith even for a debtor facing no financial difficulties so long as they show that a reorganization is not "objectively futile." *See, e.g.*, *In re Aldrich Pump LLC*, No. 20-30608, 2023 WL 9016506, at *4 (Bankr. W.D.N.C. Dec. 28, 2023) (noting that the "objective futility prong" required by *Carolin* can preclude dismissal of bankruptcy petitions "filed by solvent, non-distressed debtors"); JA260 (bankruptcy court noting that a motion to dismiss would "likely fail" the *Carolin* standard). This rash of opinions has proven incredibly hard to elevate for this

---

[3] *See also In re Bestwall LLC* (Case No. 17-31795); *In re Aldrich Pump LLC* (Case No. 20-30608); *In re Murray Boiler LLC* (Case No. 20-30609).

Court's review. In each case the standard has been used to deny a motion to dismiss—such denials are interlocutory rulings not subject to immediate review.[4]

Sister circuits have consistently held that lack of "good faith" in the debtor's bankruptcy filing, as evidenced by lack of financial distress, is itself sufficient to justify dismissing the case "for cause" under § 1112(b).[5] Most notably, the Third Circuit in *In re LTL Management, LLC* recently dismissed, for lack of financial distress, the only prominent Texas Two-Step case to have escaped this Circuit.[6] 64 F.4th 84, 101 (3d Cir. 2023) ("[A] debtor who does not suffer from financial distress cannot demonstrate its Chapter 11 petition serves a valid bankruptcy purpose supporting good faith.").

---

[4] Courts within this Circuit have held that the denial of a motion to dismiss may only be appealed as matter of right at the end of the bankruptcy case. *See Off. Comm. of Asbestos Claimants v. Bestwall LLC*, No. 3:19-CV-00396-RJC, 2023 WL 7361075, at *4 (W.D.N.C. Nov. 7, 2023) (determining that denial of a motion to dismiss under § 1112(b) is not a final order). In contrast, orders denying relief from stay *are* final and appealable. *See Safety-Kleen, Inc.* (*Pinewood*) *v. Wyche*, 274 F.3d 846, 864 (4th Cir. 2001).

[5] *See, e.g.*, *In re Cohoes Indus. Terminal, Inc.*, 931 F.2d 222, 228 (2d Cir. 1991) ("Although a debtor need not be *in extremis* in order to file such a petition, it must, at least, face such financial difficulty that, if it did not file at that time, it could anticipate the need to file in the future."); *In re Cedar Shore Resort, Inc.*, 235 F.3d 375, 379-80 (8th Cir. 2000) (filing by financially healthy debtor to affect state court litigation done in bad faith).

[6] LTL, the Two-Step BadCo of Johnson & Johnson, initially filed in this Circuit, but its case was transferred. *See In re LTL Mgmt.*, 64 F.4th at 97-98.

With multiple lower courts in this Circuit now holding that lack of financial distress is *not* sufficient "cause" for dismissal, it is no surprise that wealthy enterprises facing unwanted tort liabilities have increasingly filed their BadCo companies for bankruptcy in this Circuit. With their disfavored liabilities safely locked away in bankruptcy, the GoodCo entities, like CertainTeed, funnel *billions* of dollars to shareholders through dividends and stock buybacks while paying favored trade creditors and investors on time.[7] Meanwhile, asbestos claimants are dying without either recovery from CertainTeed or their day in court.

The Panel's opinion will only accelerate this trend. Now is the time to address this issue en banc.

**II.   This Case Squarely Presents for En Banc Review this Circuit's Standard for a Lack of Good Faith**

The Panel's decision has teed up the meaning and consequences of a debtor acting with a lack of good faith within this Circuit. The Panel held that "good faith is an *implied* requirement for obtaining an automatic stay[,] and [so] a showing of a lack of good faith, or bad faith, can therefore justify lifting the stay."[8] Op. 14. To

---

[7]   *See* JA323, JA438 (noting that in 2022 the Debtor's parent issued $1 billion in voluntary dividends); *see also, e.g.*, *Aldrich Pump LLC*, 2023 WL 9016506, at *8 (finding that in 2022 the *Aldrich* debtors' ultimate parent, based in part on the GoodCo entities' upstreaming of cash, paid over $1.8 billion in stock buybacks and dividends).

[8]   The Panel distinguished this Court's *Robbins* factors for lifting a stay as applicable only where good faith is present or otherwise implied. Op. 13 (citing *In re Robbins*, 964 F.2d 342 (4th Cir. 1992)).

determine what might constitute satisfaction of the "lack-of-good-faith requirement implied in 'cause' in § 362(d)," the Panel incorrectly applied the *Carolin* standard under § 1112(b). *Id.* at 15. It then said that "bad faith" in bankruptcy requires *both* (1) that the debtor does not intend to use chapter 11 "to reorganize or rehabilitate an existing enterprise, or to preserve going concern values of a viable or existing business" *and* (2) that the reorganization is objectively futile. *Id.* (quoting *Carolin*, 886 F.2d at 702). The Panel relied on this premise to conclude that the Debtor did not act in bad faith because, almost *six years* into this case, the Debtor's invocation of § 524(g) has not yet shown itself "to be futile." *Id.* at 16.

The Panel's decision has permanently unmoored this Circuit's standard for good faith in bankruptcy from basic bankruptcy principles and purposes. Under the Panel's ruling, a debtor can file for chapter 11 in subjective bad faith—*i.e.*, with the "overriding motive . . . to delay creditors without benefitting them in any way or to achieve reprehensible purposes"[9]—and avoid dismissal because it has adequate means such that a theoretical 524(g) plan could never be objectively futile. This makes no sense. Judge Whitley foreshadowed exactly this concern in the *Aldrich* Two-Step bankruptcy,[10] and other courts have echoed these calls, including the

---

[9]  *Premier*, 492 F.3d at 279 (quoting *Carolin*, 886 F.2d at 698).

[10]  *Aldrich Pump LLC*, 2023 WL 9016506, at *27 ("[A]rguably both *Carolin* prongs presuppose financial distress, just as the Movants say. And if one accepts the Movants' premise that Aldrich and Murray are not 'financially distressed,' these may in fact be bad faith filings. All of which I say simply for the Fourth Circuit's

Panel's Dissent.  Instead of deterring bad-faith filings, the Panel's decision would *reward* bad-faith debtors, like DBMP, its predecessor, and its GoodCo.  This situation necessitates en banc review.

## **CONCLUSION**

To stop the Texas Two-Step's abuse and manipulation of the bankruptcy process, this Court should grant the petition for rehearing en banc and reverse the bankruptcy court's order denying relief from stay.

Respectfully submitted,

*/s/ Jeffrey A. Liesemer*
Kevin C. Maclay
Todd. E. Phillips
Jeffrey A. Liesemer
CAPLIN & DRYSDALE, CHARTERED
1200 New Hampshire Ave. NW, 8th Floor
Washington, DC 20036
Telephone: (202) 862-5000
kmaclay@capdale.com
tphillips@capdale.com
jliesemer@capdale.com

Natalie D. Ramsey
Davis Lee Wright
ROBINSON & COLE LLP
1201 North Market Street, Suite 1406
Wilmington, Delaware 19801
Telephone: (302) 516-1700
Facsimile: (302) 516-1699

*Co-Counsel for the Official Committee of Asbestos Personal*
*Injury Claimants of DBMP LLC, as Amicus Curiae*

March 4, 2026

---

consideration, if it elects to reconsider applicability of the *Carolin* Two-Prong Test in the case of a solvent, non-distressed Chapter 11 debtor.").

## CERTIFICATE OF SERVICE

I certify that on this 4th day of March, 2026, I filed the foregoing brief with the Clerk of Court using the CM/ECF system, which will automatically serve electronic copies on all counsel of record.

*/s/ Jeffrey A. Liesemer*

# CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitations of Fed. R. App. P. 29(b) because it contains 2,386 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) & (6) because it has been prepared in a 14-point, proportionally spaced typeface.

*/s/ Jeffrey A. Liesemer*