_____

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

MICHAEL N. AND ANN HERLIHY AND THE ESTATE OF
PETER L. BERGRUD,

*Appellants*,

v.

DBMP LLC,

*Appellee.*

On Appeal from the United States District Court
for the Western District of North Carolina, No. 24-cv-558

# RESPONSE OF APPELLEE DBMP LLC
# IN OPPOSITION TO PETITION FOR REHEARING EN BANC

Gregory M. Gordon
JONES DAY
2727 North Harwood St., Suite 500
Dallas, Texas 75201
Telephone: (214) 220-3939

Garland S. Cassada
Richard C. Worf, Jr.
ROBINSON, BRADSHAW &
HINSON, P.A.
101 North Tryon St., Suite 1900
Charlotte, North Carolina 28246
Telephone: (704) 377-2536

C. Kevin Marshall
John C. Brinkerhoff Jr.
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001
Telephone: (202) 879-3939

Jeffrey B. Ellman
JONES DAY
1221 Peachtree St., N.E., Suite 400
Atlanta, Georgia 30361
Telephone: (404) 521-3939

*Counsel for Appellee DBMP LLC*

**TABLE OF CONTENTS**

                                                                    **Page**

TABLE OF AUTHORITIES ........................................................................ ii

INTRODUCTION ..................................................................................1

BACKGROUND ................................................................................. 2

REASONS FOR DENYING THE PETITION ...............................................7

I.      The Panel Decision Correctly Applied This Court's
        Longstanding Precedents. ................................................................7

II.     Claimants Offer No Reason To Justify En Banc Review. ....................12

        A.      The Panel Decision creates no intra-circuit conflict..................12

        B.      Claimants misstate any inter-circuit differences, which do
                not support en-banc review........................................................13

        C.      This case raises no exceptionally important question that
                demands en-banc review.............................................................16

CONCLUSION ..................................................................................19

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*A.H. Robins Co. v. Piccinin,*
788 F.2d 994 (4th Cir. 1986) ...................................................................17

*Air Line Pilots Ass'n Int'l v. E. Air Lines, Inc.,*
863 F.2d 891 (D.C. Cir. 1988) ...................................................................7

*All. for Open Soc'y v. USAID,*
678 F.3d 127 (2d Cir. 2012) ....................................................................15

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997) ................................................................................ 2

*Bestwall LLC v. Off. Comm. (Bestwall II),*
148 F.4th 233 (4th Cir. 2025) ..................................... 1, 14, 16, 17

*Blair v. Bestwall,*
99 F.4th 679 (4th Cir. 2024) .............................................................. 1, 17

*Carolin Corp. v. Miller,*
886 F.2d 693 (4th Cir. 1989) ...........................................................passim

*Chavira-Cervantes v. Holder,*
435 F. App'x 527 (7th Cir. 2011) ...........................................................15

*Furness v. Lilienfield,*
35 B.R. 1006 (D. Md. 1983) ................................................................. 3

*In re Bestwall,*
47 F.4th 233 (3d Cir. 2022) ............................................................. 1, 18

*In re Bestwall (Bestwall I),*
71 F.4th 168 (4th Cir. 2023) ...........................................................passim

*In re Cap.,*
490 F.3d 21 (1st Cir. 2007) ....................................................................15

*In re Cedar,*
235 F.3d 375 (8th Cir. 2000) ..................................................................14

*In re Gindi*,
  642 F.3d 865 (10th Cir. 2011)..................................................................... 11

*In re Laguna*,
  30 F.3d 734 (6th Cir. 1994) ....................................................................... 11

*In re Little Creek*,
  779 F.2d 1068 (5th Cir. 1986)...............................................................11, 15

*In re LTL*,
  64 F.4th 84 (3d Cir. 2023)..............................................................................14

*In re P.R.*,
  939 F.3d 340 (1st Cir. 2019) ..................................................................... 11

*In re Premier Auto. Servs., Inc.*,
  492 F.3d 274 (4th Cir. 2007)......................................................... 8, 12, 14

*In re Robbins*,
  964 F.2d 342 (4th Cir. 1992) ..........................................................passim

*In re Smith*,
  102 F.4th 643 (3d Cir. 2024)........................................................................10

*In re Sonnax*,
  907 F.2d 1280 (2d Cir. 1990) ................................................................... 11

*In re Sylmar Plaza*,
  314 F.3d 1070 (9th Cir. 2002) ...................................................................14

*Irving v. United States*,
  162 F.3d 154 (1st Cir. 1998) .........................................................................7

*Kane v. Johns-Manville Corp.*,
  843 F.2d 636 (2d Cir. 1988) .................................................................... 3

*Nat'l Ass'n of Immigr. Judges v. Owen*,
  160 F.4th 100 (4th Cir. 2025).....................................................................7

*Singh v. Fitzgerald*,
  2020 WL 6268538 (E.D. Va. Sept. 23, 2020), *aff'd*, 848 F.
  App'x 545 (4th Cir. 2021) ...................................................................... 8

*Toibb v. Radloff,*
501 U.S. 157 (1991) .................................................................... 3

*Truck Ins. Exch. v. Kaiser Gypsum Co.,*
602 U.S. 268 (2024) ......................................................... 2, 3, 14

*Turkson v. Holder,*
667 F.3d 523 (4th Cir. 2012) ....................................................10

*Watanabe v. Derr,*
139 F.4th 1056 (9th Cir. 2025) .................................................15

**STATUTES**

11 U.S.C. § 109 ............................................................................. 3

11 U.S.C. § 362(a) .........................................................................7

11 U.S.C. § 362(d) ............................................................. 4, 8, 11

11 U.S.C. § 362(g) ...................................................................... 11

11 U.S.C. § 503(b)(2) ................................................................. 3

11 U.S.C. § 524(g) .............................................................. passim

11 U.S.C. § 524(g)(2)-(4) ........................................................... 3

11 U.S.C. § 524(g)(2)(B)(ii) ....................................................... 3

11 U.S.C. § 1103(a) ..................................................................... 3

11 U.S.C. § 1112(b) ..................................................................... 9

28 U.S.C. § 157(b)(5) .................................................................17

28 U.S.C. § 1411(a) ....................................................................17

**RULES**

4th Cir. R. 40(a) ...........................................................................7

Fed. R. App. P. 40, nn. .................................................................7

**REGULATIONS**

Report of Comm. on Asbestos Litig. 2 (1991) ................................................ 2

**INTRODUCTION**

This en-banc petition is the latest step in long-running litigation to short-circuit several bankruptcy cases in which debtors have been pursuing relief under 11 U.S.C. § 524(g) to establish trusts to pay mass-tort asbestos claims as Congress authorized. *See, e.g., Bestwall LLC v. Off. Comm.* (*Bestwall II*), 148 F.4th 233 (4th Cir. 2025); *Blair v. Bestwall*, 99 F.4th 679 (4th Cir. 2024); *In re Bestwall* (*Bestwall I*), 71 F.4th 168 (4th Cir. 2023); *In re Bestwall*, 47 F.4th 233 (3d Cir. 2022). Although counsel for the Appellants ("Claimants") and amicus Committee obviously dislike these efforts, the "narrow question" presented in *this appeal* is whether the Bankruptcy Court, in denying Claimants' motion to lift the automatic stay, "abuse[d] its discretion." Op.4, 10, 19-20.

The District Court, affirming, held it did not. The panel (Niemeyer, J., joined by Harris, J.) agreed. It applied to the facts two lines of Circuit precedent that give flesh to the term "cause" in the Bankruptcy Code and stretch back over 30 years. The decision is correct, and not the rare one that warrants en-banc review. At plan confirmation, broader issues may be presented—as this Court has flagged, *twice. Bestwall II*, 148 F.4th at 243; *Bestwall I*, 71 F.4th at 183. But that is not this appeal. The Court should deny this petition, just as it denied the others.

## BACKGROUND

1. Asbestos litigation long has been "a disaster of major proportions to both the victims and producers." Report of Comm. on Asbestos Litig. 2 (1991). "[L]ong delays" became "routine," *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 598 (1997), with suits often dragging on for a decade or longer, *Bestwall I*, 71 F.4th at 183. Companies face a "continuing stream of" claims, which "arrive on a long and unpredictable timeline." *Truck Ins. Exch. v. Kaiser Gypsum Co.*, 602 U.S. 268, 273 (2024). As litigation drags on, "transaction costs exceed the victims' recovery by nearly two to one"; the risk of "exhaustion of assets threatens and distorts the process; and future claimants may lose altogether." *Amchem*, 521 U.S. at 598.

Bankruptcy allows "timely resolution of claims in one central place compared to the tort system," and Congress responded to the asbestos-tort crisis by adding § 524(g) to the Bankruptcy Code (11 U.S.C.). *Bestwall I*, 71 F.4th at 183. Section 524(g) creates a consensual mechanism by which "a Chapter 11 debtor with substantial asbestos-related liability [can] establish and fund a trust that assumes the debtor's liability," current and future. *Truck*, 602 U.S. at 273. It requires appointment of a future-claimants' representative and a current-claimants' committee; and, to confirm a plan, the debtor must secure supermajority support from at least 75% of claimants

and approval from the district court. *See Truck*, 602 U.S. at 273-74; §§ 524(g)(2)-(4), 503(b)(2), 1103(a).

Section 524(g) also has requirements for a debtor's financial condition. These include that the debtor is "likely to be subject to substantial future demands for payment" and that the "actual amounts, numbers, and timing of such future demands cannot be determined." § 524(g)(2)(B)(ii).

However, like Chapter 11 generally (and unlike, for example, Chapter 9), § 524(g) does not require insolvency, nor does it or Chapter 11 mention "financial distress." *See also* Op.16-18; 11 U.S.C. § 109; *Toibb v. Radloff*, 501 U.S. 157, 159-61 (1991) (recognizing "Congress took care in § 109 to specify who qualifies—and who does not qualify—as a debtor," and reversing dismissal based on extra-textual "ongoing business requirement"). As a result, solvent companies over the years have frequently used Chapter 11 and § 524(g) successfully. JA601-602. And Congress based § 524(g) on the plan in the bankruptcy of Johns-Manville, which was solvent when it filed. *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 639 (2d Cir. 1988); *see* Op.5; *cf. Furness v. Lilienfield*, 35 B.R. 1006, 1011 (D. Md. 1983) (criticizing the then-pending "Johns-Manville bankruptcy" as corporate manipulation of Chapter 11 at expense of "the public" and "victims of asbestos-related diseases").

**2.** The predecessor of Debtor DBMP, CertainTeed, long faced asbestos liability as a peripheral defendant. But the claims against it skyrocketed in the early 2000s as the primary asbestos manufacturers entered bankruptcy. JA228. By January 2020, almost 60,000 asbestos-related claims were pending, nearly half for a decade or more. JA229, JA280.

To stem the tide, CertainTeed restructured under Texas's Business Organizations Code, dividing into two companies, DBMP and "New" CertainTeed. DBMP received CertainTeed's asbestos liability and various assets. The assets included an uncapped funding agreement that obligates New CertainTeed to backstop DBMP's obligations—including for a § 524(g) trust—regardless of whether New CertainTeed obtains relief for itself or agrees to a plan. Op.19; JA1233-1234, JA1341-1346.[1]

DBMP filed a Chapter 11 petition in January 2020 seeking § 524(g) relief. No motion to dismiss has ever been filed. Early on, the Committee moved to lift the automatic stay "for cause" under § 362(d) for all claimants, to enable them to pursue their 60,000 claims around the country. JA220-221. It invoked the Debtor's supposed "lack of good faith in pursuing this bankruptcy case." JA270.

---

[1] As these record citations show, the amicus's characterization of the agreement (at 4) is inaccurate.

After a five-day hearing, the Bankruptcy Court issued a 79-page opinion denying the motion. Applying this Court's balancing test, from *In re Robbins*, 964 F.2d 342 (4th Cir. 1992), for lift-stay motions, the court found: that a § 524(g) trust would give claimants "a more efficient means to resolve their claims"; that lifting the stay would create "bedlam" and "inconsistent results"; and that piecemeal litigation nationwide would not promote judicial economy. JA276-286. The court also was unwilling to *de facto* dismiss the bankruptcy case "through indirect means" when it could not do so "directly" under this Court's rule, from *Carolin Corp. v. Miller*, 886 F.2d 693 (4th Cir. 1989), for dismissing a Chapter 11 case as filed in "bad faith." JA225. The Committee did not appeal.

**3.** Years later, Claimants moved to lift the stay on the same theory. The Bankruptcy Court, in denying that motion, incorporated its prior ruling and recognized that it and another court "had already rejected 'substantially identical requests' on at least four occasions in other divisional merger cases." Op.9. The court also recognized that Claimants' arguments did not rest on claim-specific facts (the normal basis for a lift-stay motion, *see Bestwall I*, 71 F.4th at 183); it thus found "an absolute certainty" that lifting the stay would effectively dismiss the bankruptcy by unleashing a flood of copy-cat motions, potentially sending innumerable claims back to the tort

system. JA920-21. Treating the supposed "bad faith" as "at most, … a factor" under the *Robbins* standard, the court again looked to *Carolin* since the alleged bad faith was the filing of the bankruptcy case itself. JA923-924.

Claimants appealed to the District Court. Judge Bell, after argument, affirmed with an opinion. JA1186-1196. Claimants appealed again. This Court affirmed too, concluding that "the bankruptcy court did not abuse its discretion." Op.4, 19-20.

**REASONS FOR DENYING THE PETITION**

Rehearing en banc is "not favored" and is "extraordinary" relief. Fed. R. App. P. 40, notes. It is a "pure exercise[] of discretion," *Irving v. United States*, 162 F.3d 154, 161 n.7 (1st Cir. 1998), to be employed "only in the rarest of circumstances," *Air Line Pilots Ass'n Int'l v. E. Air Lines, Inc.*, 863 F.2d 891, 925 (D.C. Cir. 1988) (R.B. Ginsburg, J., concurring); *accord, e.g.*, *Nat'l Ass'n of Immigr. Judges v. Owen*, 160 F.4th 100, 101-03 (4th Cir. 2025) (Wilkinson, J., concurring). "Although petitions for rehearing are filed in a great many cases, few are granted." 4th Cir. R. 40(a). Claimants offer no compelling reason to make this one of the rare cases that warrants this extraordinary relief.

## I.   The Panel Decision Correctly Applied This Court's Longstanding Precedents.

**A.**   The panel decision answered the "narrow question" whether the Bankruptcy Court "abuse[d] its discretion" in applying "the standard for lifting a § 362(a) stay." Op.4, 10, 19-20. That did not require it to resolve questions such as whether the Bankruptcy Code allows the "Texas Two-Step" or whether DBMP satisfies the requirements for obtaining § 524(g) relief under the Code. Op.10 (disclaiming these issues); *see* Op.16 (concluding that "the record does not include evidence to suggest bad faith" and DBMP "was legitimately seeking to invoke the § 524(g) process"). The panel needed only

to apply two longstanding lines of Circuit precedent (*Robbins* and *Carolin*). Which is what it did.

As the panel recognized, § 362(d) requires a showing of "cause" to lift the stay, so a lift-stay motion seeks "discretionary relief," on "a case-by-case basis." Op.11 (quoting *Robbins*, 964 F.2d at 345). *Robbins* "[]moored" this general term, the panel explained, by requiring a court to "balance potential prejudice to the bankruptcy debtor's estate against the hardships that will be incurred by the person seeking relief … if relief is denied." *Id.* (quoting *Robbins*, 964 F.2d at 345). And *Robbins* added three non-exclusive factors as aids. *Id.* This has been the standard in this Circuit "for decades." *Id.*

Usually, lift-stay motions turn on "the specific facts of a particular claim." *Bestwall I*, 71 F.4th at 183. But as *Carolin* noted and the panel accepted, a showing of "bad faith" in filing a case "can … justify lifting the stay" as well. Op.14; *see Carolin*, 886 F.2d at 699 (recognizing "extreme cases" in which "a finding that the bankruptcy case was not commenced in good faith" justified lifting the stay).

And as the panel and lower courts recognized, whether a case was filed in "bad faith" has long been controlled by *Carolin*, which requires "both subjective bad faith and objective futility." Op.151; *see, e.g., In re Premier Auto. Servs., Inc.*, 492 F.3d 274, 279-82 (4th Cir. 2007); *Singh v. Fitzgerald,*

2020 WL 6268538, at *1 (E.D. Va. Sept. 23, 2020), *aff'd*, 848 F. App'x 545 (4th Cir. 2021). Here too, the panel explained, the Bankruptcy Code (§ 1112(b), on dismissal) uses the general term "cause." Op.14. So *Carolin* developed "boundaries" around that statutory term and the judicially crafted bad-faith concept. *Id.*; *see Carolin*, 886 F.2d at 701 & n.3 (favoring a "disciplined" two-part approach, even though "proof inevitably will overlap" and some circuits avoid a clear distinction). Bad-faith filing (or not) is a finding of "fact subject to the clearly erroneous standard." *Carolin*, 886 F.2d at 702.

After correctly explaining these longstanding precedents, the panel correctly applied them. The Claimants did not even challenge the Bankruptcy Court's analysis under *Robbins*, which was both extensive and correct. Op.13. And the panel found no error (much less clear error) in how the Bankruptcy Court applied the *Carolin* and *Premier* line to answer whether the case was filed in "bad faith." Op.13-18. On that, the panel recognized the Bankruptcy Court's rulings "that there was a lack of evidence in the record of subjective bad faith, and even if there were such evidence, the Claimants had failed to meet the objective futility requirement." Op.15. DBMP was *actually "seeking"* (subjectively intending) to employ the § 524(g) process; it had "*legitimate[ ]*" *grounds* to do so; and there was no reason to think its effort

9

*futile*. Op.16 (emphases added). Nor was there reason to think alleged lack of "financial distress" (whatever that might mean) "necessarily" undermined all that, as *per se* "bad faith"—particularly since Congress in § 524(g) set out specific financial requirements that DBMP could well meet. Op.16-19.

**B.** Nothing Claimants (or amicus) say suggests that this straightforward panel decision was wrong, much less in a way that would change the outcome or warrant en-banc review.

*First*, Claimants challenge the Bankruptcy Court's balancing of some of the *Robbins* factors. Pet.10-11. But this is belated, *see* Op.13; they do not address the court's reasoning (including its drawing on its prior decisions); and their passing assertions hardly show an abuse of discretion. For example, they attack the finding that, because their lift-stay argument *attacks the whole case*, granting relief to them would require granting it to everyone, "dumping more than 60,000 asbestos cases back into the tort system." JA282. But a court's prediction is a fact, reviewed for clear error. *See Turkson v. Holder*, 667 F.3d 523, 530 (4th Cir. 2012) ("likelihood of future [event]" was factual finding); *In re Smith*, 102 F.4th 643, 657 (3d Cir. 2024) (collecting cases). And this prediction was obviously correct: The Bankruptcy Court found an "absolute certainty" of this, and explained why. JA920-921.

*Second,* Claimants accuse the panel of "disregard[ing]" the burden of proof. Pet.11. It did not. The statute, which they never quote, addresses the burden on an "issue" at a "hearing" (§ 362(g)), and the authority, none of which they cite, is uniform that movants must make an initial showing of "cause" under § 362(d). *E.g., In re Sonnax,* 907 F.2d 1280, 1285 (2d Cir. 1990); *In re P.R.,* 939 F.3d 340, 347 (1st Cir. 2019); *In re Gindi,* 642 F.3d 865, 872 (10th Cir. 2011). Thus, the panel decision says a movant needs "to demonstrate 'cause.'" Op.11. Besides, the burden did not matter: DBMP's case is not objectively futile, which is conclusive under *Carolin.* And Claimants' argument for "subjective" bad faith fundamentally seeks a *per se* rule for *any* "non-distressed" entity pursuing § 524(g) relief, not a finding depending on the particular facts here, which are not disputed. Op.15-19.

*Finally,* Claimants argue that *Carolin* should not apply to lift-stay motions that attack the whole case rather than resting on the specific facts of a particular claim. They cite no support for this either. *Carolin* itself anticipated its rule would apply in that context, both expressly (at 699) and by drawing on lift-stay decisions like *In re Little Creek,* 779 F.2d 1068 (5th Cir. 1986). 886 F.2d at 698-702. Other circuits do the same. *See, e.g., In re Laguna,* 30 F.3d 734, 737-38 (6th Cir. 1994); *Little Creek,* 779 F.2d at 1072. And Claimants' approach would perversely allow parties to subvert a case via

lift-stay motions without establishing that the whole case was improper under the rule governing dismissal.

## II.  Claimants Offer No Reason To Justify En Banc Review.

### A.  The Panel Decision creates no intra-circuit conflict.

Claimants' lead contention is that the panel decision "shatters intra-circuit uniformity." Pet.13. The truth is the opposite: As shown above, the decision changed *nothing* in simply applying the *Robbins* and *Carolin* lines of precedent. And Claimants' critiques hold no water.

*First,* the panel did not "effectively overrule[]" *Premier* (Pet.13). It repeatedly *cited* it, along with *Carolin.* Op.14-15. *Premier* simply applied *Carolin* to dismiss a case given "substantial evidence" supporting the bankruptcy court's finding of "both objective futility and subjective bad faith," 492 F.3d at 280-82. Rather than purporting to add to *Carolin*, it merely recognized that, *under Carolin*, the case filed by the "solvent" business there should be dismissed. *Id.* at 280. The core problem was that the business—with "no unsecured creditors and few, if any, secured creditors"—had "no demonstrable need to reorganize." *Id.*; *see also Bestwall I*, 71 F.4th at 182 (recognizing *Carolin* is "more comprehensive" than merely considering "financial distress"). Nor was it novel that *Premier* recognized such a scenario might suffice under both elements of *Carolin* (even setting aside that the debtor filed to stay eviction on an expired lease). 492 F.3d at

12

280-81. *Carolin* anticipated that. 886 F.2d at 701 n.3. And DBMP's situation is nothing like in *Premier*—with myriads of claimants, the prospect of massive and uncertain future liability, and a statute (§ 524(g)) designed for reorganizing in its exact situation.

*Second*, the panel did not *split* from *Carolin* in *following* it. Pet.14. As with *Premier*, Claimants pull out pieces of the court's reasoning in disregard of its *holding*. Under *Carolin*, the way to know whether a petition accords with the Bankruptcy Code's purposes so as to be in good faith is to *apply Carolin*. And to avoid objective futility, having money has never been enough. *Contra* Pet.14, Amicus 9. There must be an objectively reasonable path to a resolution under the Code. Here, as the panel and lower courts agreed, there is: DBMP's condition due to its current and projected asbestos litigation makes it entirely legitimate—hardly futile—to pursue relief *under a directly applicable provision of the Code*, § 524(g).

### B. Claimants misstate any inter-circuit differences, which do not support en-banc review.

Claimants next contend the panel decision defies the Supreme Court and creates a split from other Circuits. Neither is true, much less warrants review.

Claimants' only purported conflict with the Supreme Court is general dicta in the opening lines of *Truck* that bankruptcy offers people "in financial

distress a fresh start." Pet.16. That is of course unobjectionable as a general proposition, but it does not purport to lay down some definition or rule: The case did not involve lift-stay, dismissal, claimed bad faith, or "financial distress"—just who is a party-in-interest. 602 U.S. at 272. Plus, the panel decision explains why *Truck* actually supports affirmance. Op.16-17.

Claimants fare no better with their spurious assertion that, before the panel decision, "all circuits were uniform" that "financial distress" is required. Pet.17-18. Setting aside what that judicially crafted phrase might mean, particularly given that it cannot mean insolvency, *see Bestwall II*, 148 F.4th at 245 & n.8 (Agee, J., concurring); *In re LTL*, 64 F.4th 84, 102 (3d Cir. 2023) (admitting to "a fine line"), the Third Circuit stands apart in imposing a *per-se* rule that, without "financial distress," a petition is *necessarily* filed in bad faith. 64 F.4th at 100-01.

The Ninth Circuit, for example, has rejected "*per se*" rules for bad faith as conflicting with its requirement to "determine a debtor's good faith on a case-by-case basis ...." *In re Sylmar Plaza*, 314 F.3d 1070, 1075 (9th Cir. 2002). This Court, as detailed above, requires subjective bad faith and objective futility, with financial questions folded in as relevant. *Carolin*, 886 F.2d at 701; *see Premier*, 492 F.3d at 280. The Eighth Circuit permits dismissal on proof of only subjective bad faith, *In re Cedar*, 235 F.3d 375,

381 (8th Cir. 2000), and others apply varying considerations and conclude generally that bad faith is a totality-of-the-circumstances review, *see, e.g.*, *Little Creek*, 779 F.2d at 1073. The First Circuit has left open whether bad faith is a basis for dismissal at all. *In re Cap.*, 490 F.3d 21, 24 (1st Cir. 2007). None of this is new: Even in crafting its rule for "bad faith" as "cause," this Court in *Carolin* itself acknowledged some *doctrinal* divergence, while expecting *practical* divergence to be small. 886 F.2d at 700-01.

Adopting a mandate of "financial distress" (whose absence is *per se* "bad faith") would require overruling *Carolin*, yet Claimants do not even ask this Court to go so far. Even if they did, it is not a compelling basis for en-banc review to just posit a pre-existing split and ask the Court to change its place in it. *See Chavira-Cervantes v. Holder*, 435 F. App'x 527, 530 (7th Cir. 2011) (Hamilton, J., concurring); *Watanabe v. Derr*, 139 F.4th 1056, 1057 (9th Cir. 2025) (Paez & Koh, JJ., concurring); *see also All. for Open Soc'y v. USAID*, 678 F.3d 127, 132-33 (2d Cir. 2012) (Pooler, J., concurring).

And even if this Court did so, that would not change the result. As the panel concluded, based on text and history, Congress in § 524(g) "recognized a different form of financial distress"—one accounting for the "lingering

uncertainty" of future claims, and one that DBMP satisfies. Op.18.[2] The petition fails to acknowledge, much less challenge, this conclusion in these narrow circumstances under § 524(g).

**C. This case raises no exceptionally important question that demands en-banc review.**

As shown above, the panel decision ultimately resolved a "narrow" question on deferential review. Op.4, 10, 19-20. It expressly disclaimed blessing the "Texas Two-Step" procedure or determining that DBMP is entitled to confirm a plan under § 524(g). Op.10. Its effect is simply to again reiterate that the "time and place" to challenge the merits of a reorganization "is at plan confirmation." *Bestwall I*, 71 F.4th at 183; *accord Bestwall II*, 148 F.4th at 243. Despite this, the Claimants and amicus strain to magnify the panel decision with hyperbolic arguments about its implications. None is accurate or persuasive.

*First*, Claimants charge that the decision embraced "policy-driven reasoning" that "usurps" Congress's policymaking role. Pet.19-20. They do not substantiate that accusation, and it is false on the face of the decision:

---

[2] Although the Committee and Claimants contend DBMP lacks financial distress, the Committee in an adversary proceeding alleges DBMP is insolvent. Adv. Pro. No. 22-3000, Adv. Dkt. 14; *see* Bk. Dkt. 1197. There has been no finding in the bankruptcy case of DBMP's financial state.

The panel focused on the *text* of provisions of the Bankruptcy Code, Circuit *precedents* developing those statutory terms, and the *history* of § 524(g). It used the normal means of *implementing* what Congress has done.

*Second*, Claimants cast the decision as somehow an affront to federalism. Pet.20-21. It is not: The case was filed under the Bankruptcy Code, which redirects claims, usually state-law claims, into federal court, much as diversity jurisdiction does. This is unremarkable. Further, the panel expressly did not reach any constitutional question or ultimate question in this case; and when § 524(g) applies, any federalism implications are ones *Congress* has decided. The panels of this Circuit have not in the divisional-merger asbestos cases been pioneering jurisdictional expansions. *See Bestwall II*, 148 F.4th 233; *Bestwall I*, 71 F.4th 168; *see also Blair*, 99 F.4th 679.

*Third*, Claimants assert that "[c]ontinuance of the stay tramples … rights to due process and jury trials." Pet.21. This is frivolous: Federal statutes guarantee in bankruptcy the right to a jury trial in district court for "personal injury tort and wrongful death claims." 28 U.S.C. §§ 157(b)(5), 1411(a); *see A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1012 (4th Cir. 1986). Nothing in § 524(g) or DBMP's case abrogates that right.

*Finally*, the Committee as amicus (at 3-8) offers a polemic against the

"Texas Two-Step," labelling this Circuit "ground zero" for it. That disregards the legal issues this appeal actually presents, the legal issues the prior appeals in *Bestwall* actually presented, and the fact that this panel decision (like the prior ones) applied established law to undisputed facts to resolve the issues actually before it. *See* Op.10 & n.* (explaining how dissent went far afield). Again, the panel's decision here is that the Bankruptcy Court did not abuse its discretion in denying a motion to lift the stay. Besides, the present universe is three cases (*Bestwall*, *Aldrich Pump/Murray Boiler*, and this one), and no divisional-merger case has been filed in this Circuit in over four years.

To be sure, these few cases have spawned "rampant" (Amicus 3) *appeals*—to this Circuit, the District Court, and even another circuit, 47 F.4th 233 (3d Cir.) (reversing order quashing discovery subpoena issued by bankruptcy court in favor of debtor). But that is not a function of any *debtor's* (mis)conduct. Rather, counsel for claimants continue to "relentlessly attempt[ ] to circumvent the bankruptcy proceeding[s]" with collateral challenges in strained postures. *Bestwall I*, 71 F.4th at 184; *see* JA920 (criticizing "aggressive" and dilatory practices); JA924 ("Repeating this exercise for different claimants with the same identical legal posture is a waste of everyone's time."). The Court should not indulge those attempts.

## CONCLUSION

The petition should be denied.

Dated: March 13, 2026

Gregory M. Gordon
JONES DAY
2727 North Harwood Street,
Suite 500
Dallas, Texas 75201
Telephone: (214) 220-3939
gmgordon@jonesday.com

Garland S. Cassada
Richard C. Worf, Jr.
ROBINSON, BRADSHAW &
HINSON, P.A.
101 North Tryon Street, Suite 1900
Charlotte, North Carolina 28246
Telephone: (704) 377-2536
gcassada@robinsonbradshaw.com
rworf@robinsonbradshaw.com

Respectfully submitted,

/s/ *C. Kevin Marshall*

C. Kevin Marshall
John C. Brinkerhoff Jr.
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001
Telephone: (202) 879-3939
ckmarshall@jonesday.com
jbrinkerhoff@jonesday.com

Jeffrey B. Ellman
JONES DAY
1221 Peachtree Street, N.E.,
Suite 400
Atlanta, Georgia 30361
Telephone: (404) 521-3939
jbellman@jonesday.com

**CERTIFICATION**

In accordance with the Federal Rules of Appellate Procedure and the Local Rules of this Court, I hereby certify that this Brief complies with the type-volume limitations of Fed. R. App. P. 40(d)(3) because it contains 3,886 words, excluding the parts exempted by Fed. R. App. P. 32(f). This Brief has been prepared in a proportionally spaced 14-point Georgia font in the text and footnotes, using Microsoft Word. This certification has been prepared in reliance on the word-count function of Microsoft Word.

*/s/ C. Kevin Marshall*

**CERTIFICATE OF SERVICE**

I hereby certify that, on March 13, 2026, I filed the foregoing using this Court's CM/ECF system, which effected service on all parties.

_/s/ C. Kevin Marshall_