UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
AT CHARLOTTE

ANGELIKA WEISS and
ANGELIKA WEISS *as Executor*
*of the Estate of* WILSON BUCKINGHAM,

   Appellants,

v.             CIVIL ACTION NO. 3:24-cv-00297

BESTWALL, LLC,

   Appellee.

---

In re

             Chapter 11
BESTWALL LLC,       Case No. 17-31795

   Debtor.

---

## MEMORANDUM OPINION AND ORDER

   Pending is Appellant Angelika Weiss' -- both individually and in her capacity of Executor of the Estate of Wilson Buckingham -- Appeal of the Bankruptcy Court for the Western District of North Carolina's (the "Bankruptcy Court") Order Denying Wilson Buckingham and Angelika Weiss' Motion for Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d) [ECF 1], filed March 11, 2024.[1] On June 10, 2024, Ms. Weiss filed her brief in support of her appeal.

---

[1] Unfortunately, Mr. Buckingham passed away on May 2, 2024. Ms. Weiss, as executor of Mr. Buckingham's estate, has since been substituted in his place. [*See* ECF 20].

[ECF 7]. On July 10, 2024, Appellee Bestwall, LLC ("Bestwall"), responded in opposition [ECF 13], to which Ms. Weiss replied [ECF 15] on July 24, 2024.

## I.

In July 2017, Bestwall was formed through a divisional merger of Georgia-Pacific LLC ("Georgia-Pacific"), an entity formerly engaged in the manufacture and sale of asbestos-containing products since 1965. Georgia-Pacific's business resulted in a lengthy history of asbestos-related litigation. Indeed, "[f]rom 2014 to 2017, for example, Bestwall paid $558 million in defense and indemnity costs for asbestos litigation." *Bestwall LLC v. Off. Comm. of Asbestos Claimants of Bestwall, LLC*, 148 F.4th 233, 236 (4th Cir. 2025). By 2017, "Bestwall faced around 64,000 pending asbestos claims, with tens of thousands more anticipated through at least 2050." *Id*.

Due to this sprawling and seemingly limitless litigation, in July 2017, Georgia-Pacific underwent a corporate, two-part restructuring, in which two new entities were formed in its place: Bestwall and the New Georgia-Pacific LLC ("New GP"). This type of restructuring is commonly referred to as the "Texas Two-Step," a "maneuver [that] 'splits a legal entity into two, divides its assets and liabilities between the two new entities, and terminates the original entity.'" *Id*. at 237 (quoting *In re LTL Mgmt., LLC*, 64 F.4th 84, 96 (3d Cir. 2023)). As a result, "[t]he lion's share of assets—and indeed many liabilities—go into a new company, while the asbestos liabilities fall into a separate company, whose primary purpose is to resolve the asbestos claims." *Id*. Thereafter, "[t]he company holding the asbestos liabilities . . . files for bankruptcy[,]" and "[t]he bankruptcy court issues an injunction channeling all asbestos-related claims into a personal injury trust, known as an 11 U.S.C. § 524(g) trust." *Id*. (citing *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 234 (3d Cir. 2004), *as amended* (Feb. 23, 2005)). This process effectively "allows a debtor to

2

address in one forum all potential asbestos claims against it, both current and future, as well as current and potential future claims against third parties alleged to be liable on account of asbestos claims against the debtor." *Id*. (quoting *In re Bestwall LLC*, 606 B.R. 243, 249 (Bankr. W.D.N.C. 2019), *aff'd*, No. 3:20-cv-103-RJC, 2022 WL 67469 (W.D.N.C. Jan. 6, 2022), *aff'd*, 71 F.4th 168 (4th Cir. 2023)).

Utilizing this two-step framework, Bestwall was assigned the entirety of Old Georgia-Pacific's asbestos liabilities and some of its assets to resolve the asbestos claims, while the bulk of Old Georgia-Pacific's $28.3 million company was assigned to New GP. Specifically, "Bestwall received:

(a) three bank accounts containing approximately $32 million in cash;

(b) all contracts of the old Georgia-Pacific related to its asbestos-related litigation;

(c) certain real estate;

(d) 100% of a separate company that manufactures and sells gypsum plaster products . . . [with] . . . projected . . . cash flow of approximately $18 million per year, and . . . [and a valuation of] approximately $145 million in 2017; and

(e) an agreement from Georgia-Pacific to pay for Bestwall's expenses incurred in the normal course of business; administration expenses if Bestwall declared bankruptcy; and a § 524(g) asbestos trust in the amount required by a confirmed reorganization plan if Bestwall couldn't fund the trust."

*Id*. at 237-238.

In November 2017, Bestwall petitioned for relief under Chapter 11, triggering the automatic stay under 11 U.S.C. § 362. Bestwall also sought and was granted an order enjoining the prosecution of any "Bestwall Asbestos Claims" claims against certain non-debtor affiliates known as "protected parties." [ECF 7 at 11; ECF 13 at 8]. In 2018, the Official Committee of Asbestos Claimants ("the Committee") sought dismissal of Bestwall's Chapter 11 petition under section 1112(b), contending the petition was filed in bad faith inasmuch as Bestwall was a solvent

entity. Applying the two-prong test for bad faith dismissals articulated by our Court of Appeals in *Carolin Corp. v. Miller*, 886 F.2d 693, 700-01 (4th Cir. 1989)[2] and its progeny, the Bankruptcy Court denied the Committee's Motion. *See In Re Bestwall LLC*, 605 B.R. 43, 48-50 (Bankr. W.D.N.C. 2019) (Beyer, J.). In so doing, the Court found "[a]ttempting to resolve asbestos claims through 11 U.S.C. § 524(g) is a valid reorganizational purpose, and filing for Chapter 11, especially in the context of an asbestos or mass tort case, need not be due to insolvency." *Id*. at 49. Inasmuch as the Court concluded the Committee failed to establish the matter was objectively futile given Bestwall had the resources to reorganize, it declined to reach the question of subjective bad faith. *Id*. The Court noted it would "ultimately have to rule on Bestwall's good faith, albeit in a different context, at confirmation." *Id*.

The Committee subsequently sought leave to appeal to the district court under 28 U.S.C. § 158(a)(3). It also moved for certification of direct appeal to our Court of Appeals under 28 U.S.C. § 158(d)(2). Our Court of Appeals, however, denied the petition. *See Off. Comm. of Asbestos Claimants of Bestwall, LLC v. Bestwall LLC*, No. 19-408, 2019 WL 13512209 (4th Cir. Nov. 14, 2019). Thereafter, the district court declined to exercise its discretion in granting the Committee leave to appeal. *Off. Comm. of Asbestos Claimants v. Bestwall LLC*, 3:19-cv-00396-RJC, 2023 WL 7361075, at *5 (W.D.N.C. Nov. 7, 2023) (Conrad, J.).

---

[2] Under *Carolin*, dismissal of a Chapter 11 petition due to bad faith is proper when the movant establishes both (1) "objective futility of any possible reorganization," *and* (2) "the subjective bad faith of the petitioner in invoking this form of bankruptcy protection." 886 F.2d at 694. The objective futility inquiry focuses on whether "there exists the realistic possibility of an effective reorganization." *Id*. at 698 (internal citations and quotations omitted). "The subjective bad faith inquiry is designed to insure that the petitioner actually intends to use the provisions of Chapter 11 . . . to reorganize or rehabilitate an existing enterprise, or to preserve going concern values of a viable or existing business." *Id*. at 702 (internal citations and quotations omitted).

4

Several years later in 2023, the Committee again moved to dismiss, this time contending the Bankruptcy Court lacked subject-matter jurisdiction over a solvent debtor like Bestwall. Claimant Wilson Buckingham also sought dismissal at this time inasmuch as he had not yet been diagnosed with mesothelioma when the Committee first moved to dismiss in 2018. Like the Committee previously, Mr. Buckingham moved to dismiss on bad faith grounds under *Carolin*, primarily contending Bestwall lacked the financial stress necessary to be a Chapter 11 debtor. The Bankruptcy Court denied both the Committee and Mr. Buckingham's Motions. *See In re Bestwall LLC*, 658 B.R. 348 (Bankr. W.D.N.C. 2024).

Respecting Mr. Buckingham's Motion, the Bankruptcy Court concluded its 2019 Opinion and Order rejecting the Committee's identical bad faith contentions under *Carolin* was the law of the case inasmuch as neither the new facts, nor law cited by Mr. Buckingham warranted reconsideration of its previous ruling. *See In re Bestwall*, 658 B.R. at 359 ("While the movant is different and the motion was filed four and a half years after the First Motion to Dismiss, the focus is on substantially the same facts, some new facts that the court does not consider to be substantially different evidence, and some new law that is either not controlling or is consistent with the court's [2019] Opinion and Order."). The Bankruptcy Court thus declined to address the merits of Mr. Buckingham's *Carolin*-based contentions considering its previous ruling.

Mr. Buckingham and the Committee subsequently requested the Bankruptcy Court certify its denial of dismissal for direct appeal to our Court of Appeals. In Mr. Buckingham's certification request, he asserted the appellate issue amounted to "whether a non-distressed, wealthy debtor filed in bad faith[.]" [ECF 3354 at 74 in 3:17-bk-31795]. He urged "that certification [would] materially advance [the] case by providing [him] with the ability to seek review of the *Carolin* standard in the context of the Dismissal Order." [*Id*.]. While the Bankruptcy

Court agreed to certify its denial of the Committee's Motion given the jurisdictional issues raised therein, it declined to certify its denial of Mr. Buckingham's Motion.[3] In denying Mr. Buckingham's certification request, the Bankruptcy Court explained Mr. Buckingham's assertions ignored the court's ruling given it had declined to revisit the merits of the *Carolin* bad faith issue. [*See id*. at 74-75 ("In an effort to get an issue on appeal to the Fourth Circuit, Mr. Buckingham's motion ignores this Court's ruling and its Dismissal Order. It's as if he has requested certification of what he wished for the order to be, rather than what it is.")]. The Bankruptcy Court thus concluded certification would fail to "materially advance" the case's progress inasmuch as "the Fourth Circuit would be limited to reviewing the Dismissal Order and likely would not reach the *Carolin* standard and the propriety of [the] case[.]" [*Id*. at 75]. It also emphasized it had "followed controlling precedent in its application of the law-of-the-case doctrine and the divesting rule," and there was thus no "matter of public importance" present. [*Id*. at 74-75].

Mr. Buckingham then sought leave to appeal the Bankruptcy Court's 2024 denial of his Motion to Dismiss in another related, consolidated case pending before the undersigned. On November 12, 2025, the Court denied Mr. Buckingham's request inasmuch no controlling issue

---

[3] Our Court of Appeals accepted the Committee's direct appeal and affirmed the Bankruptcy Court's denial of the Committee's Motion to Dismiss on August 1, 2025, in a split decision. *See Bestwall*, 148 F.4th at 236 (holding "federal courts have subject-matter jurisdiction over bankruptcy cases involving solvent debtors" inasmuch as "the Constitution grants Article III judicial power over all cases arising under the laws of the United States," which includes the Bankruptcy Code.). In deciding the appeal, our Court of Appeals made clear it was not considering "the validity of the controversial Texas two-step maneuver[,]" nor "whether a debtor's ability to pay its debts is relevant to a bankruptcy case." *Id*. at 241. It noted the latter issue had already been "considered in the Committee's [2018] motion to dismiss for bad faith and may come up at future junctures," such as "at plan confirmation[.]" *Id*. On October 30, 2025, our Court of Appeals denied *en banc* review of its affirmance by an 8-6 vote. *See Bestwall LLC v. Off. Comm. of Asbestos Claimants of Bestwall, LLC*, --- F.4th ---, No. 24-1493, 2025 WL 3034121 (4th Cir. 2025).

of law was presented by the appeal given the Bankruptcy Court had appropriately applied settled precedent. [*See* ECF 50 in 3:24-cv-42].

Following the Bankruptcy Court's oral denial of the Motions to Dismiss in 2023, two claimants, Joann and Richard Dale ("the Dales"), sought relief from the automatic stay in efforts to liquidate their asbestos related tort claims against Bestwall in state court. [*See* ECF 3127 in 17-bk-31795]. Mr. Buckingham and Ms. Weiss filed a statement in support of the Dales' motion. [ECF 3144 in 17-bk-31795]. On October 19, 2023, the Bankruptcy Court held a hearing on the Dales' motion. [ECF 3154 in 17-bk-31795].

At the conclusion of the parties' arguments, the Bankruptcy Court orally denied the Dales' motion on the record, concluding the factors set forth by our Court of Appeals in *In re Robbins*, 964 F.2d 342 (4th Cir. 1992) failed to establish the cause necessary to grant relief from the automatic stay. [*Id.* at 69-71]. In so doing, the Bankruptcy Court explained its obligation to consider the motion in the context of the matter before it, namely, "a mass tort asbestos case with an excess of 60,000 claimants[.]" [*Id.* at 69]. The Court explained if it were to grant the Dales' request, it would likely "result in a wave of similar motions[,]" which the Court "would be hard pressed to deny[,]" especially given the Dales' failure to plead "any unique facts or circumstances that would justify lifting the stay as to them or otherwise distinguish their case from the thousands of cases that are pending in state court." [*Id.* at 70].

The Court also justified its denial for the same reasons it granted the earlier preliminary injunction motion, which was affirmed by our Court of Appeals. *See In re Bestwall LLC*, 71 F.4th 168 (4th Cir. 2023). Specifically, the Bankruptcy Court emphasized "the importance of centralizing all of the pending claims in the bankruptcy court," while also recognizing our Court of Appeals' sentiments that though claimants "'can bring individual actions for relief based on the

specific facts of a particular claim,'" the Dales had failed to establish any unique facts differentiating their claim that would warrant relief from the automatic stay. [ECF 3154 at 70 in 17-bk-31795 (quoting *In re Bestwall LLC*, 71 F.4th at 183)]. The Bankruptcy Court further concluded as follows:

> [A]llowing the ongoing litigation of asbestos claims against the debtor in state court would cause irreparable harm to the debtor, which could defeat the purpose of th[e] bankruptcy case and could be akin to dismissal of the case, and, it would undermine judicial economy for this Court to be proceeding towards an estimation while at the same time we have a number of cases in which individual claimants are liquidating their claims in state court.

[*Id*. at 71]. On December 13, 2023, the Bankruptcy Court entered its written Order denying the Dales' Motion for Relief from the Automatic Stay as set forth on the record at the October 19, 2023, hearing. [ECF 3218 in 17-bk-31795].

On December 28, 2023, roughly two weeks after the Bankruptcy Court denied the Dales' Motion by written Order, claimants Wilson Buckingham and Angelika Weiss filed their own Motion for Relief from the Automatic Stay. [*See* ECF 3242 in 17-bk-31795]. In support, Mr. Buckingham and Ms. Weiss primarily reiterated their bad faith *Carolin* contentions raised in their earlier denied Motion to Dismiss. [*Id*.]. On January 18, 2024, following oral arguments from the parties, the Bankruptcy Court orally denied the Motion on the record after assessing the *Robbins* factors. [ECF 3268 in 17-bk-31795].

In denying Mr. Buckingham and Ms. Weiss' Motion, the Bankruptcy Court largely reiterated the same reasoning it had provided in denying the Dales' Motion:

> I conclude I should deny the motion for relief from stay and in large part, I do so for the same reasons I denied the Dales' motion for relief from stay . . .
>
> Consideration of the Robbins factors, particularly the second factor, that being whether modifying the stay will promote judicial economy and whether there would be greater interference with the bankruptcy case if the stay were not lifted because

8

matters would have to be litigated in bankruptcy court, I believe and find [the factor] weighs against modifying the automatic stay.

As I said in the Dales' case, I can't look at modifying the stay in Mr. Buckingham's case in isolation, at least particularly not with respect to the second prong. That issue must be considered in the context of this case being a mass tort case and because that is the reality in which we find ourselves, I still conclude that if I granted Mr. Buckingham's motion for relief from stay I would be obliged to grant the motion for relief from stay of most, if not all, claimants who sought similar relief. That is true for Mr. Buckingham as it was for the Dales because he has not pled unique facts or circumstances that would justify lifting the stay as to him or otherwise sufficiently distinguish his case from the thousands of other cases pending in state court. I suppose that's even more true now, given the debtor's stipulation regarding the pain and suffering claim.

And Mr. Ruckdeschel's right. That number can't be known with certainty. It is speculative, to some extent, but I have to believe and I conclude that it would be in the thousands, or at least enough for me to conclude that it would not promote judicial economy to grant this motion for relief from stay and would ultimately equate to dismissal to do so.

[*Id*. at 77-78]. The Bankruptcy Court also addressed and rejected Mr. Buckingham's bad faith

*Carolin* contentions; an issue not raised in the Dale's Motion. The bulk of those remarks warrant

recitation here:

In carefully reviewing the Carolin case again for the umpteenth time and the context of this case, the Fourth Circuit includes a brief discussion about [§] 362 in passing and in dicta to support its conclusion that a bankruptcy court can dismiss a chapter 11 petition if it was filed in bad faith. There was no pending motion for relief from stay in Carolin. That issue was not on the table and they cited [§] 362 because it includes the word "cause" as does [§] 1112(b). And the Fourth Circuit was defining what that broad language means and of course, ultimately concluded that it supports the construction that a debtor's lack of good faith may constitute cause for dismissal of a petition.

Similarly, the Fourth Circuit points out that [§] 362 "inferentially permits inquiry into the debtor's good faith in commencing this case as a whole," and it cites Collier's for that proposition.

Mr. Buckingham accurately points out that, "Nowhere in Carolin does the Fourth Circuit indicate its two-pronged approach to dismissal is applicable to motions for relief from stay." I guess I would add, though, but nowhere does it say that it doesn't and to me, it defies logic to conclude that the two-prong standard doesn't apply in the context of this case and I underscore that statement if considering whether to

9

> grant relief from stay on the basis that the case was filed in bad faith. In other words, it can't be that a less stringent standard applies to a relief from stay motion which, if granted, would result in the dismissal of the case. To conclude otherwise would mean that I could deny the motions to dismiss the case as a bad faith filing for failure to meet the objective futility prong of the two-prong standard, but grant relief from stay upon the finding of subjective bad faith. If I granted such relief from stay to one claimant, I would be obliged to grant it to all claimants, again resulting in the dismissal of this case and standing in stark contrast to the proposition for which I have held <u>Carolin</u> stands.

[*Id*. at 78-80]. The Bankruptcy Court went on to voice its frustrations with Mr. Buckingham and Ms. Weiss for seeking stay relief "so quickly on the heels" of the Court's denial of the Dale's Motion and for repackaging their Motion for Relief from Stay with "a repeat of the arguments made by [them] in [their] motion to dismiss . . . many of [which] . . . [are] misplaced in the context of a motion for relief from stay." [*Id*. at 81]. The Bankruptcy Court thus cautioned Mr. Buckingham and Ms. Weiss' counsel to take care to ensure their future pleadings were not being filed "for an improper purpose, that they are not duplicative of the arguments . . . made in [the] motion to dismiss, and again in [the] motion for stay relief." [*Id*. at 83].

Ms. Weiss now appeals the Bankruptcy Court's denial of her and Mr. Buckingham's Motion for Relief from the Automatic Stay. Ms. Weiss contends the Bankruptcy Court erred in denying stay relief and again "refused to rule on whether Bestwall filed [its petition] in bad faith" because of its misplaced interpretation of the *Carolin* two-pronged standard. [ECF 7 at 16].

Specifically, Ms. Weiss asserts the Bankruptcy Court erred by (1) equating a grant of her requested stay relief "as the equivalent of dismissing Bestwall's petition and the entire bankruptcy case," [*Id*.], (2) "basing its ruling upon the admittedly speculative 'parade of horribles' that granting [the Motion] would open the floodgates," [*Id*. at 8], (3) extending "its prior erroneous misinterpretation of *Carolin's* two-pronged standard for dismissal" to the Motion, [*Id*.], (4)

10

improperly "impos[ing] the burden on Mr. Buckingham to 'distinguish' his case from those of other tort claimants by pleading 'unique facts and circumstances,' despite § 362(g) placing the burden of proof on the [d]ebtor," [*Id.*], and (5) applying the balancing test of *In re Robbins* . . . to th[e] bad faith lift stay [M]otion." [*Id.*]. Bestwall disagrees and maintains the Bankruptcy Court properly denied the Motion. [*See generally* ECF 13].

**II.**

Pursuant to the Bankruptcy Code, "when a bankruptcy petition is filed, all judicial actions against the debtor are automatically stayed." *Herlihy v. DBMP, LLC*, 167 F.4th 142, 149 (4th Cir. 2026) (citing 11 U.S.C. § 362(d)). The "stay provides the bankruptcy court with the 'opportunity to harmonize the interests of both debtor and creditors while preserving the debtor's assets for repayment and reorganization of his or her obligations.'" *Id.* (quoting *Robbins*, 964 F.2d at 345). To this end, "the stay . . . serves the fundamental purposes and functions of bankruptcy." *Id.*

Nonetheless, relief from the automatic stay may be granted by a bankruptcy court if the moving party "is able to demonstrate 'cause, including the lack of adequate protection of an interest in property of such party in interest.'" *Id.* (quoting 11 U.S.C. § 362(d)). Inasmuch as "cause" is not expressly defined, our Court of Appeals has "concluded that bankruptcy courts 'must determine when [such] discretionary relief is appropriate on a case-by-case basis.'" *Id.* (quoting *Robbins*, 964 F.2d at 345). In so doing, upon consideration of a request to lift an automatic stay, bankruptcy courts "'must balance potential prejudice to the bankruptcy debtor's estate against the hardships that will be incurred by the person seeking relief from the automatic stay if relief is denied.'" *Id.* Our Court of Appeals first articulated the following factors in *Robbins* to weigh these competing interests in determining whether cause exists to lift an automatic stay:

11

(1) whether the issues in the pending litigation involve only state law, so the expertise of the bankruptcy court is unnecessary; (2) whether modifying the stay will promote judicial economy and whether there would be greater interference with the bankruptcy case if the stay were not lifted because matters would have to be litigated in bankruptcy court; and (3) whether the estate can be protected properly by a requirement that creditors seek enforcement of any judgment through the bankruptcy court.

*Id*. at 149-50 (quoting *Robbins*, 964 F.2d at 345). Our Court of Appeals recently reiterated that, "[f]or decades," the *Robbins* factors have served as "the controlling authority for deciding motions to lift an automatic stay" in this circuit. *Id*. at 150 (citing, *e.g.*, *In re Lee*, 461 F. App'x 227, 231-33 (4th Cir. 2012); *In re McCullough*, 495 B.R. 692, 697-98 (W.D.N.C. 2013)).

Under 28 U.S.C. § 158(a), district courts possess jurisdiction to hear appeals from final judgments and orders of the bankruptcy courts. *See Ritzen Group, Inc. v. Jackson Masonry, LLC*, 589 U.S. 35 (2020). "An order granting or denying relief from the automatic stay is final and appealable." *Safety-Kleen, Inc. v. Wyche*, 274 F.3d 846, 864 (4th Cir. 2001). "When a district court reviews a bankruptcy court's decision to decline to lift an automatic stay, the district court acts as an appellate court, reviewing the bankruptcy court's findings of fact for clear error and conclusions of law *de novo*." *Herlihy v. DBMP LLC*, No. 3:24-CV-00558-KDB, 2024 WL 4589795, at *2 (W.D.N.C. Oct. 28, 2024), *aff'd*, 167 F.4th 142 (4th Cir. 2026) (citing *Canal Corp. v. Finnman (In re Johnson)*, 960 F.2d 396, 399 (4th Cir. 1992)). "Further, a bankruptcy court's discretionary determination on whether to lift an automatic stay will be overturned only upon a showing of abuse of that discretion." *Id*.; *see also In re Robbins*, 964 F.2d at 345.

12

The Court has previously addressed and rejected Ms. Weiss' assertion regarding the Bankruptcy Court's purported misinterpretation of *Carolin's* two-pronged standard for dismissal when it denied her Motion for Leave to Appeal the Bankruptcy Court's dismissal Order. [*See* ECF 50 in 3:24-cv-42]. There is thus no need to readdress that same contention here. The Bankruptcy Court has consistently interpreted and applied the *Carolin* standard in its current form, each time emphasizing the claimants' inability to establish the objective futility requirement. To the extent Ms. Weiss asserts *Carolin's* two-pronged standard is inapplicable in the stay lift context, that position was recently rejected by our Court of Appeals in another -- nearly identical -- Chapter 11 bankruptcy case involving a Texas Two-Step created entity seeking § 524 reorganization due to its sprawling asbestos-related liabilities. *See DBMP*, 167 F.4th at 151 (explaining "the lack-of-good-faith requirement implied in 'cause' in *both* § 1112(b) *and* § 362(d) requires the movant to show *both* subjective bad faith *and* objective futility.") (emphasis added)).

Ms. Weiss' remaining assignments of error fare no better. A review of the Bankruptcy Court's oral ruling, as set forth in detail above, demonstrates the Court appropriately applied *Robbins* and sufficiently explained its reasons for denying Ms. Weiss' request to lift the automatic stay. In fact, many of the Court's reasons for denying the request, namely, the impediment to judicial economy and *de facto* dismissal of the bankruptcy case resulting from an improvident lift, were recently affirmed by our Court of Appeals as sufficient justifications in the remarkably similar *DBMP* matter. *See id.* at 150 (affirming the bankruptcy court's finding that a stay lift "would reduce judicial economy by releasing a wave of asbestos cases back into the court system" and its "predict[ion] that lifting the stay would 'effectively destroy the bankruptcy case.'").

13

The Bankruptcy Court appropriately applied settled precedent and did not abuse its discretion in denying Ms. Weiss' Motion for Relief from the Automatic Stay. There is positively no clearly erroneous factual finding and no legal error giving rise to a finding of abuse. *See id*. at 153. Accordingly, there is no basis to disturb the ruling below.

**IV.**

Based on the foregoing discussion, Ms. Weiss' appeal of the denial of her Motion for Relief from the Automatic Stay is **DENIED** and the Bankruptcy Court's rulings are **AFFIRMED**.

The Clerk is directed to send a copy of this written opinion and order to counsel of record and to any unrepresented party.

ENTER: March 16, 2026

Frank W. Volk
Chief United States District Judge